**Louise BOSTON, Administratrix of the Estate of Mae Evelyn Boston, Deceased, Plaintiff,**

v.

**LAFAYETTE COUNTY, MISSISSIPPI; Bill Plunk, Individually, In His Official Capacity as Chancery Clerk of Lafayette County, Mississippi or of the State of Mississippi and As Agent, Employee, and/or Servant or of Lafayette County, Mississippi or the State of Mississippi; Mel Davis, Individually, In His Official**

---

Capacity as a Special Master of Lafayette County, Mississippi or of the State of Mississippi and As Agent, Employee, and/or Servant of Lafayette County, Mississippi or of The State of Mississippi; Ricky Miller, Individually, in his official capacity as jailer of Lafayette County, Mississippi and as Agent, Employee and/or Servant of Lafayette County, Mississippi; Lyndon Carpenter, Individually, in his official capacity as Jailer of Lafayette County, Mississippi and as Agent, Employee, and/or Servant of Lafayette County, Mississippi; John Thomas, Individually, in his official capacity as jailer of Lafayette County, Mississippi, and as Agent, Employee, and/or Servant of Lafayette County, Mississippi; F.D. "Buddy" East, Individually, in his official capacity as Sheriff of Lafayette County, Mississippi and as Agent, Employee, and/or Servant of Lafayette County, Mississippi; and Hartford Accident & Indemnity Company, Defendants.

No. WC87–151–B–D.

United States District Court,
N.D. Mississippi, W.D.

Aug. 21, 1990.

Ellis Turnage, Cleveland, Miss., for plaintiff.

R. Lloyd Arnold, Jackson, Miss., Jay Gore, III, Grenada, Miss., H. Scot Spragins, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

Presently before the court are cross motions for summary judgment on behalf of

the plaintiff and those defendants sued in their individual capacity. Because the court will deny the plaintiff's motion and grant the defendants' motion as to the plaintiff's federal constitutional claims, it reviews the facts in the light most favorable to the plaintiff and incorporates the facts recited in its opinion of July 30, 1990. 743 F.Supp. 462. The court restates or adds facts in this opinion only as necessary to dispose of the pending motions.

## I. FACTS

Mae Evelyn Boston ("Boston") died in her sleep from heart failure after being detained approximately forty-eight hours in the Lafayette County Jail pending involuntary commitment proceedings. Her natural sister brings this action against, among other parties, the Special Master and Chancery Clerk who issued the writ to take custody, the Lafayette County Sheriff, and the jailors who observed Boston during her brief detention. The plaintiff alleges the defendants, in their individual capacity, deprived Boston of her substantive and procedural due process rights and negligently failed to provide adequate medical care to Boston as required by state law. She seeks compensatory and punitive damages as well as declaratory relief.[1]

Boston, diagnosed with chronic paranoid schizophrenia since childhood, was detained after a sister signed an affidavit which stated, in effect, that Boston presented a danger to herself and her newborn child. Upon signing of the affidavit, the State Chancery Judge validly appointed defendant Mel Davis ("Davis") Special Master over the initial detainment proceedings. Davis found that Boston warranted temporary detainment in the Lafayette County Jail pending a professional psychiatric and medical examination, and ordered the Chancery Clerk to issue a writ of custody so that Boston could be detained. Defendant Bill Plunk ("Plunk"), the Chancery Clerk,

complied with Davis' command and issued the writ. During the same proceeding, Davis appointed an attorney to represent Boston in any future commitment proceedings and appointed two medical professionals from a nearby mental health center to examine and evaluate Boston's mental and physical condition within the next twenty-four hours.

The writ to take custody was issued at approximately ten o'clock on a Friday morning. Although the court-appointed physicians were ordered to examine Boston within twenty-four hours, the Deputy Chancery Clerk, who is not a party to this action, called the mental health center and scheduled Boston's examination for 9:30 the following Monday morning.

Boston died at approximately 11:30 that Sunday morning in between half-hourly visual inspections of the jailor on duty, Ricky Miller ("Miller"). According to the plaintiff's submitted expert testimony, the blood clots which caused Boston's death formed at least twenty-four hours and probably several days prior to her death, and likely would have been detected and effectively treated had medical professionals examined her within twenty-four hours of her detainment.

Boston's mental illness was manifest when she was detained at the jail on Friday morning. Upon arrival she made grunting sounds and pushed down upon her abdomen, which accompanying police officers interpreted as a hallucination that she was having a baby. She appeared physically ill to one of the accompanying officers, but merely appeared disoriented to Miller, who admitted Boston into custody.

Miller placed Boston alone inside a six man cell after her arrival, pursuant to written procedure. He also observed her condition at half hour intervals and attempted to administer her medication according to the prescriptions.[2] However, he failed to com-

---

1. The plaintiff's request for declaratory relief is discussed separately at the end of the court's opinion.

2. Boston refused medication from Miller on two occasions, but accepted it at other times. The

plaintiff does not allege that Boston died because of any failure to receive her previously prescribed medication, which consisted of psychotropic drugs and antibiotics.

plete a medical screening form on Boston as required by departmental policy and he did not ascertain that Boston had recently given birth by caesarian section. Boston remained psychotic and gave no indication to Miller that she was in pain or that she wished for professional medical attention.

Jailors Lyndon Carpenter ("Carpenter") and John Thomas ("Thomas") also observed Boston at half hour intervals during the weekend. On their respective shifts they administered her medication as prescribed and noted each dosage in the log book. No symptoms of physical illness were readily apparent, and at one point during the weekend Thomas observed her sitting in her cell, singing loudly. Neither jailor investigated nor discovered Miller's failure to complete a medical screening form for Boston.

Miller was on duty the morning Boston expired. He checked on her at approximately 11:15 that morning, at which time she was asleep and snoring. At 11:40 he conducted another check, heard no sound, and moved closer to investigate her physical condition. Upon discovering he could not wake her, he immediately telephoned for an ambulance and contacted Sheriff East. Boston was pronounced dead on arrival at the hospital.

## II. LAW

The plaintiff alleges that Davis and Plunk demonstrated deliberate indifference to Boston's serious medical needs and deprived Boston of her Fourteenth Amendment right to substantive and procedural due process by ordering Boston's detainment in the Lafayette County Jail. The plaintiff further alleges that Sheriff East and jailors Miller, Carpenter and Thomas exhibited deliberate indifference to Boston's serious medical needs by providing constitutionally inadequate medical care, and that they deprived Boston of procedural due process by failing to keep Boston safely during her detention, as required by state statute.

In contrast, defendants Davis and Plunk assert they are absolutely immune for their role in the decision to detain Boston, and

defendants East, Miller, Carpenter and Thomas deny they were deliberately indifferent to Boston's medical needs. Sheriff East and the jailors also contend they are entitled to summary judgment under the doctrine of qualified immunity.

### A.  Placement of Boston in the County Jail

Davis and Plunk are the only individual defendants who participated in the decision to place Boston in the Lafayette County Jail. Judges are entitled to absolute immunity in the exercise of their judicial function unless they act in the clear absence of jurisdiction. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). An act is non-judicial if it is not normally performed by a judicial officer or if it is performed outside the judge's official capacity. *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978). *See also Harper v. Merckle,* 638 F.2d 848 (5th Cir.) *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981) (four step analysis for determining if act is judicial act). Judicial immunity extends to those officials whose acts are functionally equivalent to that of a judge, *Johnson,* 870 F.2d at 995, and quasi-judicial immunity shields lower officials, such as clerks, who implement judicial orders. *Hanner v. United States Gov't,* 660 F.Supp. 77, 78 (S.D.Miss. 1987); *Johnson v. Craft,* 673 F.Supp. 191, 193 (S.D.Miss.1987). *See also Hagerty v. Succession of Clement,* 749 F.2d 217, 220 (5th Cir.1984), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985) (court clerk does not act under color of state law for purposes of § 1983 liability if he has no legal authority to commit or negate judicial act).

It is uncontroverted that Special Master Davis properly exercised jurisdiction over Boston's initial detainment proceeding, and it is equally clear to the court that Davis ordered Boston's detainment in his official judicial capacity. Initial detainment proceedings are usually performed by

a State Chancery Judge, and Davis acted pursuant to his lawful appointment as Special Master when he ordered Boston detained. Therefore Davis is entitled to absolute immunity from damage liability for any constitutional deprivation he might have wrought upon Boston. By this ruling the court is not finding that Boston did incur a deprivation of a right by being ordered detained by Davis pursuant to the sister's affidavit. Likewise, Plunk is entitled to quasi-judicial immunity, for he acted pursuant to his official position when he informed Davis of the affidavit and issued the writ to take custody.[3]

### B.  Medical Care Afforded Boston
### 1.  Sheriff East

The plaintiff also alleges that Sheriff East and jailors Miller, Carpenter and Thomas were deliberately indifferent to Boston's serious medical needs and deprived her of procedural due process during her detainment. With respect to East, the plaintiff's brief states that Miss.Code Ann. sections 19–25–35 (1972) and 19–25–69 (1972) granted Boston a statutory "entitlement to receive protective services in accordance with the terms of the statute, an entitlement which would enjoy due process protection against state deprivation," and that East deprived Boston of procedural due process because, without providing adequate notice and a hearing, he "fail[ed] to exercise his affirmative ministerial duties under [these state statutes]."[4]

Addressing the plaintiff's procedural due process claim, the court finds that the duties imposed under Miss.Code Ann. sections 19–25–35 and 19–25–69 do not grant Boston an entitlement to procedural due process protection. In effect, the plaintiff argues that a sheriff must provide absolute safekeeping for all persons under his custody, unless he deprives detained persons of this right after providing adequate notice and a hearing. See Taylor v. Ledbetter, 818 F.2d 791, 822 (11th Cir.1987) (en banc, Tjoflat, J. dissenting in part), cert. denied, —— U.S. ——, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

Moreover, the authority cited in support of the plaintiff's claim is inapposite. See DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249, at 258 n. 2 (1989); Taylor v. Ledbetter, 818 F.2d at 798–800. DeShaney is cited as supporting the plaintiff's procedural due process theory, but there the Court expressly refused to consider a procedural due process issue similar to the one she now raises. 489 U.S. at —— n. 2, 109 S.Ct. at 1003 n. 2, 103 L.Ed.2d at 258 n. 2. In Taylor, the Eleventh Circuit found that a comprehensive state statutory scheme concerning placement of children in foster homes granted children protected by the statute an entitlement to procedural due process protection. 818 F.2d at 799. However, unlike the statutory scheme reviewed in Taylor, Miss.Code Ann. sections 19–25–35 and 19–25–69 are isolated statutes and not part of any comprehensive legislative framework, therefore the court cannot infer that Mississippi's legislature intended to constitutionalize state tort law

---

**3.** The plaintiff surprisingly cites *Thomas v. Sams* to argue that Davis and Plunk acted solely in a ministerial capacity during the proceedings. 734 F.2d 185, 189 (5th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). In *Thomas,* the defendant was a local official who, in his official capacity as mayor, maliciously signed out a criminal complaint without probable cause, and then, in his capacity as magistrate, issued an arrest warrant based upon the allegations in his own complaint. *Id.* Even under these extreme circumstances, the court found the defendant was entitled to absolute judicial immunity for his issuance of the warrant. "[A]ll parties agree[d] that [the defendant's] act as magistrate, including issuing the

warrant and setting bond, [were] judicial acts for which he [was] absolutely immune from liability." *Id.*

**4.** Miss.Code Ann. § 19–25–35 states, in pertinent part: [The sheriff] shall take into his custody, and safely keep, in the jail of his county, all persons committed by order ... of courts.

Likewise, Miss.Code Ann. § 19–25–69 states: The sheriff shall have charge of the courthouse and jail of his county, of the premises belonging thereto, and of the prisoners in said jail. He shall preserve the said premises and prisoners from mob violence, from any injuries or attacks by mobs or otherwise, and from trespasses and intruders.

through these statutes and expand liability under § 1983.[5]

To impose liability upon the sheriff under § 1983, "[i]f, as was the case here, the sheriff [was] not personally involved in the acts causing the constitutional deprivation, the plaintiff must show that some other act by the sheriff caused the violation." *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir.1988). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987)).[6]

■ Boston was entitled to reasonable medical care during her detainment, unless the government's failure to do so was reasonably related to a legitimate government objective. *Cupit v. Jones*, 835 F.2d 82, 84 (5th Cir.1987). At very least, Sheriff East was prohibited from acting with deliberate indifference to Boston's serious medical needs. *Burns v. City of Galveston*, 905 F.2d 100 (5th Cir.1990). *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ The court finds as a matter of law that Sheriff East did not deprive Boston of constitutionally adequate medical care. The record clearly reveals that Sheriff East assumed no direct role in Boston's detainment and that he adequately performed his supervisory function. There is "no evidence whatever that the jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to any other inmate, or that the sheriff was otherwise actually informed or consciously believed that the policy would expose [detainees] to substantial risk of significantly unmet serious medical needs...." *Thompkins*, 828 F.2d at 305. The county regularly performs, at its own expense, complete physical and psychiatric evaluations of mentally ill persons within twenty-four hours, pursuant to court order. Sheriff East implemented additional measures and required the filling of a medical screening form, the proper administration of prescription medication, the physical segregation of mentally ill detainees, jailor observation of all detainees at half hour intervals, and provision of professional medical care upon request of any detainee or inmate. There is no evidence he had reason to know these measures might ultimately prove insufficient, or that the Deputy Chancery Clerk might not schedule Boston's medical examination within twenty-four hours, as required by state law and the court's order. *Cf. Lewis v. Parish of Terrebonne*, 894 F.2d 142 (5th Cir.1990) (warden aware of detainee's predisposition toward suicide).

■ Even if East violated Boston's constitutional rights, he is entitled to qualified good faith immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

**5.** In her motion for summary judgment against the county, the plaintiff alleged that Boston was denied procedural due process because she did not receive a medical examination within twenty-four hours of her detainment, as required by state law. Miss.Code Ann. § 41–21–69 (Supp. 1989). In briefing that motion, neither the plaintiff nor the county brought the *Taylor* decision to the court's attention. Upon reconsidering the plaintiff's procedural due process claim in light of *Taylor*, the court remains of the opinion that the commitment procedures for mentally ill persons do not provide a state law entitlement which merits procedural due process protection. Even if the statutory scheme is construed as granting an entitlement, the plaintiff has produced evidence of only one isolated instance where the county failed to provide an examination within twenty-four hours, and this is insufficient to demonstrate an unconstitutional county policy for purposes of imposing § 1983 liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

**6.** In *City of Canton, Ohio v. Harris*, 489 U.S. 378, ——, 109 S.Ct. 1197, 1198, 103 L.Ed.2d 412, 417 (1989), the Supreme Court applied a deliberate indifference standard to a claim against a municipality for its alleged failure to properly train its police officers.

constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Lewis,* 894 F.2d at 145. East is shielded by this immunity unless the contours of the right he allegedly violated were sufficiently clear that a reasonable officer would have understood his actions violated the right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The degree of medical care constitutionally mandated for mentally ill detainees awaiting commitment proceedings is clear only to the extent that pretrial detainees may not be treated with deliberate indifference to their serious medical needs. *See Burns,* 905 F.2d 100 (5th Cir.1990); *Cupit,* 835 F.2d at 84; *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285. Considering the preventive measures which East implemented to provide medical care beyond that provided by the county's routine medical evaluations, the dearth of legal authority addressing any special medical requirement for mentally ill detainees, and the inconspicuous nature of the condition which caused Boston's death, the court finds that East is entitled to immunity for his role in supervising the medical care provided Boston.

2. Jailors Carpenter, Thomas and Miller

██ The plaintiff finally asserts that jailors Miller, Carpenter and Thomas exhibited gross negligence or deliberate indifference towards Boston's serious medical needs and failed to comply with state law. She specifically points out that the jailors failed to complete a medical screening form, did not discover that Boston had recently undergone a caesarian section, did not "supervise" the care of Boston, and did not call Boston's family members to investigate whether Boston had any physical problems. After thorough review of the record and the plaintiff's arguments, the court does not find the plaintiff's contention well taken.[7]

There is no evidence in the record that Carpenter or Thomas was deliberately indifferent to Boston's serious medical needs. Neither jailor was on duty when Boston was admitted or when she was discovered dead in her cell. On their respective shifts, Carpenter and Thomas observed Boston at thirty minute intervals and administered her medication as required; at no time did she appear in pain or convey she was in need of medical attention. While they did not discover that Miller failed to complete a medical screening form, telephone Boston's family to investigate whether Boston suffered from any underlying serious medical conditions, or somehow ascertain that Boston recently had given birth by caesarian section, these facts do not permit a reasonable inference of gross negligence or deliberate indifference.

██ Moreover, both defendants are entitled to qualified immunity, because any duty of jailors to investigate the medical background and underlying physical problems of mentally ill detainees is certainly not a clearly established constitutional right of which these defendants should have been aware. *See Douthit v. Jones,* 619 F.2d 527, 533 (5th Cir.1980) (jailors may rely on qualified immunity as defense to § 1983 claims). *Lewis,* 894 F.2d at 145 (setting forth standard for immunity).

While Miller's potential liability poses a more difficult question, the court finds that as a matter of law, Miller was not grossly negligent or deliberately indifferent to Boston's serious medical needs. Miller failed to complete a medical screening form upon Boston's arrival, but he performed his duties adequately throughout the rest of the weekend. He placed Boston in a separate cell for her protection, conducted visual inspections every half hour and attempted to medicate Boston according to

---

7. The plaintiff additionally asserts the jailors are liable because they ostensibly failed to comply with the duties imposed by Miss.Code Ann. sections 19-25-35, 19-25-69 and 41-21-69, and because they failed to adequately train themselves in meeting the medical needs of the mentally ill. These claims are wholly without merit. None of the cited code sections specifically imposes any duty upon *jailors,* and the plaintiff's second amended complaint does not name the jailors as defendants under a "failure to train" theory.

prescription. Based on the medical information he received, he had no reason to suspect that Boston was developing the serious physical illness which caused her death. Boston made grunting sounds and held her abdomen when she arrived at the jail, but she did not appear in pain, and the officers who accompanied her interpreted her actions as hallucinations about giving birth.[8] To Miller she appeared dazed but physically healthy when first brought inside the jail. She seemed physically ill to one of three accompanying city police officers, however, there is no evidence the officer ever mentioned his observation to Miller, and at deposition the officer was unable to articulate any specific manifestation of illness that he observed. Miller did have cause for concern because he also knew that Boston had ingested insulin. He was told to observe her, and did so at thirty minute intervals. However, she never manifested any adverse symptoms as a result of her insulin intake, her ingestion of insulin did not contribute to her death, and there is no evidence that a doctor, if informed of Boston's self-injections, would have asked to examine her personally. In short, Boston did not display any known, demonstrable and serious physical disorders when she arrived at the Lafayette County Jail, and Miller took constitutionally adequate steps to meet her medical needs.

The plaintiff correctly notes that Miller failed to complete a medical screening form for Boston, however, this fact is insufficient to support a finding that he denied Boston constitutionally adequate medical care.

▬▬▬ The Due Process Clause does not mandate utilization of screening forms to medically evaluate pretrial detainees, and jailors are not constitutionally required to detect hidden physical or psychiatric problems which would generally require the diagnostic skills of a medical professional. *See Burns*, 905 F.2d 100. While screening forms or checklists may generally increase the amount of medical information received from detainees and increase the thoroughness and uniformity of observations made by jailors, use of a form does not elevate the constitutional standard of medical care which must be provided for a detainee, and the jailor who negligently deviates from procedure and fails to utilize one cannot be considered deliberately indifferent to a detainee's serious medical needs, unless the jailor should otherwise be aware the detainee suffers from some outwardly apparent and obviously serious medical condition. *See Burns*, 905 F.2d 100. Therefore, Miller's failure to fill out the medical screening form is an insufficient ground for finding that Miller was deliberately indifferent to Boston's medical needs.

It is noteworthy that even if Miller had completed the screening form and Boston had answered it accurately, Miller would have known only that Boston recently had given birth, suffered from gestational diabetes, and been examined, treated and released by a physician. He would have had no reason to know she was developing a hidden medical condition which would ultimately prove fatal. At worst, his failure to obtain additional medical information can be construed as negligent behavior. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligence insufficient for imposition of liability under § 1983).[9]

### C.  Propriety of Declaratory Relief

The plaintiff seeks declaratory relief against the previously discussed defendants in their individual capacities and Davis and Plunk as agents of the State of Mississippi, should the court rule that Bos-

8.  The plaintiff, in her motion for summary judgment against the county, conceded that Boston was hallucinating when she arrived at the Lafayette County Jail.

9.  In any event, Miller is entitled to qualified immunity for his acts. Under the applicable objective standard, *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736–37, Miller could not reasonably foresee that failure to complete a screening form, comply with state law, or conduct an independent examination of Boston's medical condition might later be considered a deprivation of Boston's constitutional right to medical care.

ton was placed in jail pursuant to state policy. The court may award the plaintiff declaratory judgment against all of the defendants to this action, provided the requirements of the Declaratory Judgment Act are met. 28 U.S.C. § 2201. However, due to the nature of the plaintiff's claims and the lack of an actual controversy between the parties, the court finds that declaratory relief is inappropriate in this case.

The plaintiff seeks declaratory judgment against defendants Davis, Plunk and the State of Mississippi for the decision to temporarily detain Boston in the Lafayette County Jail. As grounds for relief in her motion for summary judgment against Lafayette County, the plaintiff alleged that detainment of Boston in the county jail deprived Boston of substantive due process in three ways: (1) it was a per se violation of the Fourteenth Amendment to temporarily detain her in a jail and not a medical facility; (2) it denied Boston of her right to be placed in the least restrictive alternative setting; and (3) it deprived Boston of her right to adequate psychiatric care pending a professional medical evaluation. Among other things, the court held that jail detainment was not a per se violation of the Fourteenth Amendment, that Boston had no right to temporary detainment in the least restrictive alternative environment, and that any deprivation of psychiatric care during Boston's detainment was not causally related to Boston's subsequent death from heart failure. Additionally, the court found that Boston was not deprived of procedural due process because she failed to receive a full medical examination within

twenty-four hours as required by state law. The court need not duplicate its analysis before denying declaratory relief on these same theories against Davis and Plunk in their individual capacities.[10] Moreover, since the plaintiff has not proven the relevant state commitment statute to be unconstitutional, declaratory relief against Plunk and Davis as agents of the state is similarly inappropriate.

■ To grant any declaratory relief would also be improper because the plaintiff suffers no threat of future harm, hence, no "actual controversy" exists to satisfy the requirements of the Declaratory Judgment Act.[11] 28 U.S.C. § 2201. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985); *Johnson v. Onion*, 761 F.2d 224 (5th Cir.1985).[12] Before a court can properly award declaratory relief, the plaintiff must demonstrate "a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F.2d at 1552. "Additionally, the continuing controversy may not be conjectural hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of *future* injury." *Id.* (emphasis supplied); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

Boston's untimely and unfortunate death renders it impossible for the plaintiff to demonstrate any definite threat of future injury; the court has already dismissed the county as a defendant, and all remaining defendants are immune from damage liability as a matter of law under the doctrines

---

**10.** The plaintiff additionally seems to seek declaratory relief on the theory that Davis and Plunk were deliberately indifferent to Boston's serious medical needs because they ordered her detainment in the county jail without discovering she had recently undergone a caesarian section. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285. Assuming the *Estelle* standard applies, there is no evidence in the record to support a finding of deliberate indifference. No one from Boston's family, including the sister who signed the affidavit, informed any county officials that Boston had recently given birth and undergone surgery, and deposition testimony reveals that Davis asked whether Boston needed immediate medical attention prior to her commitment. Likewise, there is no evidence that any of the

city police officers who assisted with Boston's detainment informed Plunk or Davis about her recent childbirth and surgical procedure. As a matter of law, the failure of Davis and Plunk to properly evaluate Boston's medical condition cannot be said to constitute deliberate indifference to her serious medical needs.

**11.** The plaintiff does not seek injunctive relief and does not bring this cause as a class action.

**12.** In *Onion*, the plaintiff sought only equitable relief, while in *Emory* the plaintiff sought both declaratory relief and damages. However, the Fifth Circuit in *Onion* accepted the analysis of the "actual controversy" requirement articulated in *Emory*, despite this factual distinction.

## 756

of absolute immunity, qualified immunity or the Eleventh Amendment. *Thomas*, 734 F.2d at 189 (absolute immunity standard); *Bigford*, 834 F.2d at 1220 (qualified immunity standard); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (state official may be sued for prospective equitable relief as exception to Eleventh Amendment). Consequently, declaratory relief in this instance would only serve to answer a hypothetical question of constitutional law, assuming a potential for future harm and that the doctrines barring recovery for damages did not apply. While a declaratory judgment in the plaintiff's favor might help ease the emotional loss suffered by the plaintiff as a result of Boston's death, due to the preclusion of damages and no risk of future harm, it " 'would [be] nothing more than a gratuitous comment without any force or effect.' " *Emory*, 756 F.2d at 1552 (quoting *Northern Virginia Women's Medical Center v. Balch*, 617 F.2d 1045, 1049 (4th Cir.1980)).

### III. CONCLUSION

Upon due consideration, the court finds that no genuine issue of material fact exists regarding whether the defendants violated Boston's right to substantive and procedural due process. The court also finds that declaratory relief is improper in this action. Consequently, the court will dismiss plaintiff's constitutional claims against the remaining defendants with prejudice, and the plaintiff's pendent negligence claim without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

An order in conformance with this opinion will this day issue.