# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00968-SCT

*LOUISE BOSTON, ADMINISTRATRIX OF THE ESTATE OF MAE EVELYN BOSTON, DECEASED*

*v.*

*HARTFORD ACCIDENT AND INDEMNITY COMPANY, LAFAYETTE COUNTY, MISSISSIPPI, F. D. EAST, VERA THEOBALD, BILL PLUNK, RICKY MILLER, LYNDON CARPENTER AND JOHN THOMAS*


| | |
|---|---|
| DATE OF JUDGMENT: | 5/31/2000 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEES: | H. SCOT SPRAGINS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 4/04/2002 |
| MOTION FOR REHEARING FILED: | 4/15/2002; denied 8/1/2002 |
| MANDATE ISSUED: | 8/8/2002 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. This wrongful death action was filed by Louise Boston ("Boston"), administratrix of the estate of Mae Evelyn Boston ("Decedent") in the Circuit Court of the First Judicial District of Hinds County against Lafayette County, its sheriff, Hartford Accident and Indemnity Company ("HAIC"), the chancery clerk, a deputy chancery clerk and three jailers following a dismissal with prejudice of her federal claims and a dismissal without prejudice of her state claims in federal court. Subsequently, on defendant's motion, venue was transferred to Lafayette County. The defendant's motion to dismiss was granted when the Lafayette County Circuit Court concluded that Boston's state law claims were barred, either by the statute of limitations or by res judicata and collateral estoppel, that defendants Plunk and Theobald were entitled to quasi-judicial immunity, and that Lafayette County was entitled to sovereign immunity at the time Boston's state law claims accrued. Aggrieved, Boston perfected a timely appeal to this Court.

## FACTS AND PROCEEDINGS BELOW

¶2. (The following facts are largely incorporated from ***Boston v. Lafayette County***, 744 F. Supp. 746,

748-50 ( N.D.Miss. 1990)).

¶3. Mae Evelyn Boston ("Decedent") died in her sleep on July 12, 1987, from heart failure after being detained approximately forty-eight hours in the Lafayette County Jail pending involuntary commitment proceedings.

¶4. Decedent, diagnosed with chronic paranoid schizophrenia since childhood, was detained after her sister signed an affidavit which stated, in effect, that Decedent presented a danger to herself and her newborn child. Upon signing of the affidavit, the Chancery Judge validly appointed defendant Mel Davis ("Davis") Special Master over the initial detainment proceedings. Davis found that the Decedent warranted temporary detainment in the Lafayette County Jail pending a professional psychiatric and medical examination and ordered the Chancery Clerk to issue a writ of custody so that Decedent could be detained. Defendant Bill Plunk ("Plunk"), the Chancery Clerk, complied with Davis's command and issued the writ. During the same proceeding, Davis appointed an attorney to represent the Decedent in any future commitment proceedings and appointed two medical professionals from a nearby mental health center to examine and evaluate the Decedent's mental and physical condition within the next twenty-four hours.

¶5. The writ to take custody was issued at approximately ten o'clock on a Friday morning. Although the court-appointed physicians were ordered to examine the Decedent within twenty-four hours, the Deputy Chancery Clerk called the mental health center and scheduled the Decedent's examination for 9:30 the following Monday morning.

¶6. The Decedent died at approximately 11:30 that Sunday morning in between half-hourly visual inspections of the jailer on duty, Ricky Miller ("Miller"). According to submitted expert testimony, the blood clots which caused the Decedent's death formed at least twenty-four hours and probably several days prior to her death, and likely would have been detected and effectively treated had medical professionals examined her within twenty-four hours of her detainment.

¶7. The Decedent's mental illness was manifest when she was detained at the jail on Friday morning. Upon arrival she made grunting sounds and pushed down upon her abdomen, which accompanying police officers interpreted as a hallucination that she was having a baby. She appeared physically ill to one of the accompanying officers, but merely appeared disoriented to Miller, who admitted the Decedent into custody.

¶8. Miller placed the Decedent alone inside a six-man cell after her arrival, pursuant to written procedure. He also observed her condition at half hour intervals and attempted to administer her medication according to the prescriptions. However, he failed to complete a medical screening form on the Decedent as required by departmental policy, and he did not ascertain that the Decedent had recently given birth by caesarian section. The Decedent remained psychotic and gave no indication to Miller that she was in pain or that she wished for professional medical attention.

¶9. Jailers Lyndon Carpenter ("Carpenter") and John Thomas ("Thomas") also observed the Decedent at half hour intervals during the weekend. On their respective shifts they administered her medication as prescribed and noted each dosage in the log book. No symptoms of physical illness were readily apparent, and at one point during the weekend Thomas observed her sitting in her cell, singing loudly. Neither jailer investigated nor discovered Miller's failure to complete a medical screening form for the Decedent.

¶10. Miller was on duty the morning the Decedent expired. He checked on her at approximately 11:15 that

morning, at which time she was asleep and snoring. At 11:40 he conducted another check, heard no sound, and moved closer to investigate her physical condition. Upon discovering he could not wake her, he immediately telephoned for an ambulance and contacted Sheriff East. The Decedent was pronounced dead on arrival at the hospital.

¶11. On September 2, 1987, Boston filed her first civil action in the United States District Court for the Northern District of Mississippi alleging both federal and state law claims. In orders dated July 30, 1990 and August 20, 1990, the district court dismissed Boston's federal law claims with prejudice, but dismissed Boston's state law claims without prejudice. *Boston v. Lafayette County*, 743 F. Supp. 462, 475 (N.D.Miss. 1990), and *Boston v. Lafayette County*, 744 F. Supp. 746, 755-56 (N.D.Miss. 1990). The Fifth Circuit subsequently affirmed both decisions without opinion on May 6, 1991. *Boston v. Lafayette County*, 933 F.2d 1003 (5th Cir. 1991).

¶12. On July 6, 1993, Boston brought her second civil action in the United States District Court for the Northern District of Mississippi against some of the same defendants and additional defendants alleging both federal and state law claims. *Boston v. Theobald*, Civil Action Number: 3:93-CV-106-B-D. The district court dismissed by order and final judgment on April 20, 1995, all of Boston's federal law claims with prejudice as they were barred by collateral estoppel, and dismissed Boston's state law claims without prejudice.

¶13. On May 8, 1995, Boston filed her complaint in the Circuit Court of the First Judicial District of Hinds County claiming wrongful death. Defendants subsequently filed a motion to transfer venue to Lafayette County on July 6, 1995, which was granted by order on January 2, 1996. On November 1, 1999, the defendants filed a motion to dismiss and for summary judgment. The motion to dismiss with prejudice was granted May 31, 2000. The court determined:

> (1) that the Statute of Limitations had ran against each of the individual defendants before this matter was instituted on May 8, 1995; (2) that the claims of the plaintiff against all defendants are barred by application of *res judicata* and/or principles of collateral estoppel; (3) that individual defendant East is immune from the claims of the plaintiff under the discretionary function doctrine and/or because Sheriff East did not individually participate in the deprivations alleged in this case; (4) that Defendants Plunk and Theobald are entitled to *quasi judicial* immunity under Mississippi law; and (5) that the County was entitled to sovereign immunity.

¶14. It is from this ruling that Boston appeals.

## DISCUSSION

### I. DID THE CIRCUIT COURT PROPERLY TRANSFER THIS ACTION FROM THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY TO LAFAYETTE COUNTY?

¶15. Boston filed her complaint in the First Judicial District of Hinds County on May 8, 1995. The complaint named Hartford Accident and Indemnity Company ("HAIC"), Lafayette County, Vera Lee Theobald ("Theobald") in her capacity as deputy chancery clerk of Lafayette County, F.D. "Buddy" East ("East") individually and in his capacity as sheriff of Lafayette County, Ricky Miller ("Miller"), Lyndon Carpenter ("Carpenter"), and John Thomas ("Thomas") individually and in their capacities as jailers of Lafayette County, and Bill Plunk ("Plunk") individually and in his official capacity as Chancery Clerk of

Lafayette County.

¶16. On July 6, 1995, the defendants filed a motion to transfer venue to Lafayette County in accordance with Miss. Code Ann. § 11-46-13(2), commonly known as the Mississippi Tort Claims Act. On January 2, 1996, the Circuit Court of the First Judicial District of Hinds County, while not citing a specific statute, entered an order finding the defendants' motion for change of venue to be well taken and gave Boston twenty (20) days to dismiss individual defendants and their sureties, upon which time the court would reconsider its decision. By order dated April 2, 1996, having found that more than twenty (20) days had passed and no motion to dismiss had been submitted by Boston, the court transferred the action to the Lafayette County Circuit Court. This decision was reiterated in an order dated October 29, 1996, where the court denied Boston's motion to reconsider because Boston had failed to respond within the twenty (20) days as required by the original order from January 2, 1996.

¶17. Boston contends that because she is an adult resident citizen of Jackson, First Judicial District of Hinds County and HAIC is a non-resident of Mississippi, her suit should have stayed in Hinds County Circuit Court. Citing M.R.C.P. 82(c), Boston asserts that since venue was proper in the First Judicial District of Hinds County as to HAIC under Miss. Code Ann. §§ 11-11-7 & -11 (1972), then venue was proper as to the remaining defendants. M.R.C.P. 82(c) states:

> (c) Venue Where Claim or Parties Joined. Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22 and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties.

Miss. Code Ann. § 11-11-7 covers the suing of insurance companies:

> Actions against insurance companies, groups of insurance companies or an insurance association may be brought in any county in which a loss may occur, or, if on a life policy, in the county in which the beneficiary resides, and process may be sent to any county, to be served as directed by law. Such actions may also be brought in the county where the principal place of business of such corporation or company may be. In case of a foreign corporation or company, such actions may be brought in the county where service of process may be had on an agent of such corporation or company or service of process in any suit or action, or any other legal process, may be served upon the insurance commissioner of the state of Mississippi, and such notice will confer jurisdiction on any court in any county in the state where the suit is filed, provided the suit is brought in the county where the loss occurred, or in the county in which the plaintiff resides.

Miss. Code Ann. § 11-11-11 addresses damage suits against nonresidents:

> All civil actions for the recovery of damages brought against a nonresident or the representative of the nonresident in the state of Mississippi may be commenced in the county in which the action accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law.

The complaint shows that Boston, a beneficiary, resided in the First Judicial District of Hinds County at the time of her filing.

¶18. HAIC counters by stating that Miss. Code Ann. § 11-46-13 applies because a political subdivision is

being sued and because it was the statute in effect at the time this suit was filed in state court. In pertinent part the section states:

> (2) The venue for any suit filed under the provisions of this chapter against the state or its employees shall be in the county in which the act, omission or event on which the liability phase of the action is based, occurred or took place. The venue for all other suits filed under the provisions of this chapter shall be in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located. The venue specified in this subsection shall control in all actions filed against governmental entities, notwithstanding that other defendants which are not governmental entities may be joined in the suit, and notwithstanding the provisions of any other venue statute that otherwise would apply.

Miss. Code Ann. § 11-46-13(2) (Supp. 2001) (emphasis added).

¶19. Decedent died July 12, 1987. *Boston v. Lafayette County*, 743 F. Supp. at 464. Her death was almost six years before Miss. Code Ann. § 11-46-13 went into effect. While acknowledging that Boston did not file a civil action in state court until May 8, 1995, the only way that Miss. Code Ann. § 11-46-13 could apply to the present case is if the statute was found to be retroactive.

¶20. This Court has addressed the issue of retroactivity of statutes contained in the Mississippi Tort Claims Act. In *Jones v. Baptist Mem'l Hosp.*, 735 So.2d 993 (Miss. 1999), this Court held that if a statute is to apply "effective from and after passage," it is not to apply to causes of action that have accrued prior to the passage of the statute. This Court made the following analysis:

> Although the present case concerns the retroactivity of numerous sections of the Sovereign Immunity Act rather than solely paragraph (m) of § 11-46-9, the intent of this Court is clear. **If the statutory language mandates that the statute is to apply from and after passage, it is not to be applied retroactively to causes of action which accrued prior to passage of the statute.** The cause of action in this case accrued prior to the enactment of § 11-46-3 (providing immunity to the state and its political subdivisions, approved April 1, 1993) and 11-46-11 (providing for notice of claim requirement and one year statute of limitations, approved April 1, 1993).

*Id.* at 998 (emphasis added).

¶21. This Court has also recently reiterated that a statute will not be retroactive unless clearly stated in the statute:

> **This Court has continuously followed the rule that statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression.** *Anderson v. Jackson Mun. Airport Auth.*, 419 So.2d 1010, 1026 (Miss.1982). If the statute is unconditionally repealed without a savings clause in favor of pending suits, all pending proceedings thereunder are terminated. *Beatty v. State*, 627 So.2d 355, 357 (Miss.1993). **A statute will not be construed to be retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is.** *Anderson v. Jackson Municipal Airport Auth.*, 419 So.2d at 1027.

*Hudson v. Moon*, 732 So.2d 927, 931-32 (Miss. 1999) (emphasis added). *Fortune v. Lee County Bd. of Supervisors*, 725 So.2d 747 (Miss. 1998) and *State ex rel. Moore v. Molpus*, 578 So.2d 624 (Miss.

1991), provide additional support that a statute is to be applied prospectively unless clearly and positively expressed in the language of the statute. These two cases upheld this Court's decision in *Mladinich v. Kohn*, 186 So.2d 481 (Miss. 1966) where this Court, after giving a comprehensive list of authority, stated:

> [a] statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate. It will not be construed as retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is. In short, these cases illustrate a well-settled attitude of statutory interpretation: A preference that it be prospective only, and a requirement that there should be a clearly expressed intent in the act to make it.

*Id.* at 484.

¶22. Given the fact that the Decedent died prior to the enactment of the Mississippi Tort Claims Act and that Miss. Code Ann. § 11-46-13 does not contain plain and clearly expressed language that it is to be retroactive, we find that this statute is not applicable to the present case and that venue should not have been changed under the authority of this statute.

¶23. As stated previously, when venue was changed in the present case, no statute was cited by the Circuit Court of the First Judicial District of Hinds County. It should not be assumed that the change in venue was based upon the language found in Miss. Code Ann. § 11-46-13 as asserted by both parties to this suit. The question that remains is, if change of venue was not proper under Miss. Code Ann. § 11-46-13 because the statute was not in effect at the time the action accrued, did Lafayette County have a right to change venue to its "home county" that pre-dates the Mississippi Tort Claims Act making the change of venue in this case proper? This Court considered such prior to the enactment of the Mississippi Tort Claims Act, and in doing so may well have provided the logical basis for the venue aspects of the Act:

> In the case of *Simpson v. Neshoba County*, 157 Miss. 217, 127 So. 692, 693 [(Miss. 1930)], we had before us the question as to whether a county could be sued outside of the courts of the county, by joinder with another defendant, and although the statute applicable in that case expressly provided that the county could be sued in any court situated at the county site, it was contended that the section was inapplicable, and that the county could be sued in another county where a joint defendant resided. After referring to the statutes involved in that case, it is said: "It is the contention of the appellant that under the last section it was competent to sue Newsom in the county and district of his residence and bring the county into said district as a codefendant. It is our view that this contention is not well founded. A county is a subdivision of the state and partakes of the sovereignty of the state and can only be sued in the way and on the conditions prescribed by law, and section 3980 of Hemingway's 1927 Code (section 309, Code of 1906) has provided how a county may be sued, and where the suit shall be instituted. This statute is not affected by the general statute as to ordinary parties litigant. There is sound reason for requiring a county to be sued in the county, or in the court which sits at the county site and has jurisdiction of the suit. A county can only act through its officers, and these officers are charged with various duties for the public welfare. In defending suits against counties, the officers might be taken out of the county or called away from their public duties and the public interests would suffer in many cases by reason of their absence from their duties while attending court in other places than at the county site. The records might often have to be carried away from the county site, if such suits were maintained, to the place where the suit was tried and would endanger the safety of the said records and discommode the public who might desire to resort to the records

for any lawful purposes for which they are made and used."

*City of Jackson v. Wallace*, 189 Miss. 252, 196 So. 223, 224-25 (1940).

¶24. In *Simpson* this Court determined as a matter of public policy and practicality, when a county is being sued, such suit should take place in that county's court even if the presence of a codefendant would normally make venue proper in another county. Section 3980 of Hemingway's 1927 Code was the statute in effect at the time both *Simpson* and *City of Jackson* were decided. It stated:

> Section 3980 of Hemingway's 1927 Code (section 309, Code of 1906) provides: "Any county may sue and be sued by its name, and suits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site; but suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law."

*Simpson*, 127 So. at 693. This statute was carried forward unchanged into subsequent codes and exists today as Miss. Code Ann. § 11-45-17. It states:

> Any county may sue and be sued by its name, and suits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site; but suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law.

¶25. As was stated earlier, this action accrued prior to the enactment of the Tort Claims Act making the Act inapplicable to this case. However, this Court has commented on Miss. Code Ann. § 11-45-17, a statute which is still effective, and how it is bolstered by Miss. Code Ann. § 11-46-13(2) of the Act:

> "[S]uits against the county shall be instituted in any court having jurisdiction of the amount sitting at the county site ..." Miss. Code Ann. § 11-45-17 (1972). A complaint against Simpson County, therefore, would be properly filed in Simpson County. This position is further supported by Miss. Code Ann. § 11-46-13(2), which provides that proper venue for a tort suit against any government entity, including a county or municipality, is "in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located." Miss. Code Ann. § 11-46-13(2) (Supp.1997).

*Estate of Jones v. Quinn*, 716 So.2d 624, 627 (Miss. 1998).

¶26. Both statutory and case law support finding that transfer of venue from Hinds County to Lafayette County was proper.

### II. DID THE CIRCUIT COURT CORRECTLY CONCLUDE THAT THE CLAIMS AGAINST ALL THE DEFENDANTS WERE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS IN MISS. CODE ANN. § 15-1-49 AND/OR § 15-1-69 (1972)?

¶27. Boston contends that the circuit court erred when it determined that the claims were barred by the statutes of limitations as found in Miss. Code Ann. § 15-1-49 and/or § 15-1-69 (1972). The general statute of limitations that was in effect as of July 12, 1987, the time the action accrued, was six years.[1]

¶28. On September 2, 1987, Boston filed her first civil action in the district court alleging both federal and

state law claims. The United States District Court of the Northern District of Mississippi, in orders dated July 30, 1990 and August 20, 1990, while dismissing her federal law claims with prejudice, dismissed Boston's state law claims without prejudice. *Boston v. Lafayette County*, 743 F. Supp. 462, 475 (N.D.Miss. 1990) and *Boston v. Lafayette County*, 744 F. Supp. 746, 755-56 (N.D.Miss. 1990). The Fifth Circuit affirmed both decisions without opinion on May 6, 1991. *Boston v. Lafayette County*, 933 F.2d 1003 (5th Cir. 1991).

¶29. On July 6, 1993, Boston brought her second civil action in the United States District Court for the Northern District of Mississippi against some of the same defendants and additional defendants alleging both federal and state law claims. *Boston v. Theobald*, Civil Action Number: 3:93-CV-106-B-D. On April 20, 1995, the district court dismissed by order and final judgment all of Boston's federal law claims with prejudice as being barred by collateral estoppel, and dismissed Boston's state law claims without prejudice. On May 8, 1995, Boston filed her complaint in the Circuit Court of the First Judicial District of Hinds County claiming wrongful death.

¶30. Because Boston spent over five years in the federal court system pursuing this action and almost eight years passed from the time this case accrued to when she filed a complaint in state court, this Court must simply determine if Mississippi's six (6) year statute of limitations was tolled while Boston was in federal court.

¶31. This Court has previously held a trial court in error for ruling that claims were time-barred due to the running of the statute of limitations during the pendency of a case in federal court. *Norman v. Bucklew*, 684 So.2d 1246 (Miss. 1996). This Court detailed a situation similar to the case sub judice in *Norman*:

> The events giving rise to these claims occurred on January 10, 1990. Thus, the three years would have expired on January 11, 1993. Norman filed his federal court claim on January 8, 1993, which tolled the statute of limitations when pendent jurisdiction was invoked. The fact that these claims were subsequently dismissed without prejudice does not prevent the statute of limitations from having been tolled. Accordingly, the state trial court erred in apparently imposing the affirmative defense of the three-year statute of limitations.
>
> The malicious prosecution claim was also dismissed without prejudice by the district judge on July 7, 1993. The grand jury ultimately dismissed the criminal affidavit on October 29, 1992. Malicious prosecution claims are governed by a one-year statute of limitations. Therefore, Norman had until October 29, 1993 to file a claim in state court on this ground as noted by the district judge. Norman filed his state court claim on October 14, 1993. Thus, he tolled the malicious prosecution claim. Therefore, the state trial judge erred on this issue in holding to the contrary.

*Id.* at 1256. This Court referred to federal case law in making its determination:

> Additionally, the United States Supreme Court, in *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990) stated: " '[D]ismissal ... without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' Rule 41(a)(1), and thus does not have a res judicata effect." See also *Satsky v. Paramount Communications*, Inc., 7 F.3d 1464, 1468 (10th Cir.1993).

*Id.* at 1255.

¶32. In accordance with this Court's determination in *Norman*, we conclude that the six (6) year statute of limitations was tolled while the case was in federal court and that the trial court erred in determining that Boston's claims were time-barred.

### III. DID THE CIRCUIT COURT CORRECTLY CONCLUDE THAT IF ANY OF BOSTON'S CLAIMS SURVIVED THE STATUTE OF LIMITATIONS BAR, THE UNADJUDICATED STATE LAW CLAIMS WERE BARRED BY THE PRINCIPLES OF RES JUDICATA AND COLLATERAL ESTOPPEL?

¶33. The state law claims contained in the federal actions brought by Boston were dismissed <u>without</u> prejudice by the United States District Court for the Northern District of Mississippi in orders dated July 30, 1990, August 21, 1990 and April 20, 1995. Once this claim was in Mississippi state court and venue was transferred, the Lafayette County Circuit Court granted a motion to dismiss and summary judgment in favor of the defendants, determining "that the claims of the plaintiff against all defendants are barred by application of *res judicata* and/or principles of collateral estoppel." Regarding a dismissal without prejudice in relation to res judicata, this Court has followed the United States Supreme Court:

> Additionally, the United States Supreme Court, in *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990) stated: " '[D]ismissal ... without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' Rule 41(a)(1), and thus does not have a res judicata effect." See also *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1468 (10th Cir.1993).

*Norman v. Bucklew*, 684 So.2d. at 1254. Likewise, in *Harris v. Board of Trustees*, 731 So.2d 588, 589-90 (Miss. 1999), this Court found that collateral estoppel is inapplicable to state law claims that have been dismissed without prejudice in federal court. Therefore, the trial court erred in dismissing Boston's state claims based upon the doctrines of res judicata or collateral estoppel.

### IV. DID THE CIRCUIT COURT CORRECTLY CONCLUDE THAT DEFENDANTS PLUNK AND THEOBALD WERE ENTITLED TO QUASI-JUDICIAL IMMUNITY IN ACCORDANCE WITH MISSISSIPPI LAW?

¶34. Two of the defendants Boston filed suit against were Lafayette County Chancery Clerk Bill Plunk and Lafayette County deputy chancery clerk Vera Lee Theobald. In her complaint, Boston alleges that Plunk and Theobald were negligent in the following ways:

> (a) in failing to schedule the complete medical and psychiatric examination within 24 hours as mandated by the July 10, 1987 order to the Chancery Court of Lafayette County, Mississippi;

> (b) in failing to advise [Decedent's] family members that the complete medical and psychiatric examination as ordered by the Chancery Court of Lafayette County, Mississippi was not scheduled within 24 hours so as to afford family members the opportunity to make other arrangements;

> (c) in breaching their affirmative duties under the special relationship with [Decedent] to insure [Decedent] received the medical and psychiatric examination and treatment;

> (d) in failing to advise [Decedent's] medical doctor and Mental Health officials of her confinement;

(e) in failing to learn, investigate and discover [Decedent's] serious medical conditions and needs; and

(f) other negligence to be learned through discovery and offered at the trial of this case.

¶35. Decedent was detained after her sister signed an affidavit which stated that Decedent presented a danger to herself and her newborn child. Once the affidavit was signed, the chancellor validly appointed Mel Davis Special Master over the initial detainment proceedings. Davis determined that the Decedent should be temporarily detained in the county jail pending a professional psychiatric and medical examination, and ordered the chancery clerk to issue a writ of custody so that Decedent could be detained. Plunk, the Chancery Clerk, complied and issued the writ. Davis also appointed an attorney to represent the Decedent in any future commitment proceedings and appointed two medical professionals to examine and evaluate the Decedent's mental and physical condition within the next twenty-four hours.

¶36. The writ to take custody was issued at approximately ten o'clock on a Friday morning. Although the court-appointed physicians were ordered to examine the Decedent within twenty-four hours, the deputy chancery clerk called the mental health center and scheduled the Decedent's examination for 9:30 the following Monday morning. The Decedent died at approximately 11:30 that Sunday morning in between half-hourly visual inspections of the jailor on duty. According to submitted expert testimony, the blood clots which caused the Decedent's death formed at least twenty-four hours and probably several days prior to her death, and likely would have been detected and effectively treated had medical professionals examined her within twenty-four hours of her detainment.

¶37. The Lafayette County Circuit Court decided that Plunk and Theobald were entitled to "*quasi judicial* immunity under Mississippi law." It is this determination that Boston now appeals.

¶38. Miss. Code Ann. §§ 41-21-67 & -69 authorize chancellors to direct the chancery clerk to issue a writ to take custody and schedule a mental and physical examination of the person who is in need of mental treatment. Section 41-21-67(1) states in pertinent part:

(1) Whenever such affidavit as is provided for in Section 41-21-65 shall be filed with the chancery clerk, the clerk, upon direction of the chancellor of the court, shall issue a writ directed to the sheriff of the proper county to take into his custody the person alleged to be in need of treatment and to bring such person before the clerk or chancellor, who shall order pre-evaluation screening and treatment by the appropriate community mental health center established pursuant to Section 41-19-31 and for examination as set forth in Section 41-21-69.

Section 41-21-69(2) states in pertinent part:

(2) Such examination shall be conducted and concluded within twenty-four (24) hours after the order for examination and appointment of attorney. . .

¶39. Boston asserts that Plunk and Theobald violated their mandatory, non-discretionary duties of their office when they did not schedule Decedent's physical and psychiatric examination within the twenty-four (24) hour period as outlined in the statute. Boston refers to *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922 (1935), where this Court discussed the ministerial versus judicial duties of public officers:

This Court has repeatedly held that our courts have the power to hear claims that public officials have violated their mandatory, non-discretionary duties of office. *Poyner v. Gilmore*, 171 Miss. 859, 158

So. 922 (1935). In **Poyner** this Court stated that, "**While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, 'the most important criterion, perhaps, is that the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion**....' "

**Fordice v. Thomas**, 649 So.2d 835, 840 (Miss. 1995) (emphasis added).

¶40. In **Davis v. Little**, 362 So.2d 642 (Miss. 1978), the Court expanded on this issue:

The most commonly recognized limitation is the distinction between discretionary acts as opposed to ministerial acts. Under this distinction **the official is immune only where that which he does in the performance of his lawful duties requires "personal deliberation, decision and judgment**." See Prosser, Law of Torts s 132 (4th ed. 1971).

362 So. 2d at 643 (emphasis added).

¶41. **Evans v. Trader**, 614 So.2d 955 (Miss. 1993), effectively outlines the limited immunity an officer of the state possesses:

Under Mississippi common law, an officer of the state enjoys only a limited immunity from tort liability. **An officer has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature**, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

**Id**. at 957 (emphasis added).

¶42. Further, this Court has stated:

Qualified immunity acts to protect prison officials only when they were performing a discretionary function as opposed to a ministerial function. The distinction between the two is "that **[if] the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial**."

**McFadden v. State**, 580 So.2d 1210, 1216 (Miss. 1991) (Citing **McFadden v State**, 542 So.2d 871, 877 (Miss. 1989)) (emphasis added).

¶43. This Court has previously found officers of the state to be exposed to liability for not performing their ministerial duties. See **Barrett v. Miller**, 599 So.2d 559 (Miss. 1992) (where this Court concluded that Lauderdale County deputies were not entitled to immunity because "[t]he execution of a search warrant was a ministerial act and required no discretionary decision-making. . . ."); **Ellsworth v. Busby**, 172 Miss. 399, 160 So. 575, 575-76 (Miss. 1935) (where the Court determined that a chancery clerks failure to sign

a probate claim as required by law was a ministerial act and the doctrine of quasi-judicial immunity did not apply).

¶44. In the present case, both Miss. Code Ann. §§ 41-21-67 and 41-21-69 use the word "shall" in explaining the duties and requirements of the chancery clerk to schedule a medical and psychiatric examination within twenty-four (24) hours. This Court has held that the use of the word "shall" is a mandatory directive, *Estate of Stowers v. Jones*, 678 So.2d 660, 662 (Miss. 1996), making Plunk and Theobald's duty to schedule a medical and psychiatric examination within twenty-four (24) hours of Decedent's detainment a ministerial function, which would disqualify them from the protection of qualified immunity. As to this issue the trial court was in error.

¶45. As to all other allegations of negligence on the part of Plunk and Theobald as set out in Boston's complaint, this Court will not address these issues as they were not argued by the appellant or supported by any authority. This Court has long held that it is under no obligation to consider assignments of error unsupported and unaddressed in appellant's submitted brief. *Terrell v. Mississippi Bar*, 662 So.2d 586, 591-92 (Miss. 1995). *See also Touchstone v. Touchstone*, 682 So.2d 374 (Miss. 1996); *Ellis v. Ellis*, 651 So.2d 1068 (Miss. 1995); *James W. Sessums Timber Co. v. McDaniel*, 635 So.2d 875 (Miss. 1994); *Morgan v. City of Ruleville*, 627 So.2d 275 (Miss. 1993); *Van Slyke v. Board of of Trustees of State Institutions of Higher Learning*, 613 So.2d 872 (Miss. 1993); *E.L. Bruce Co. v. Brogan*, 175 Miss. 208, 166 So. 359 (1936).

### V. DID THE CIRCUIT COURT CORRECTLY CONCLUDE THAT LAFAYETTE COUNTY WAS IMMUNE FROM TORT LIABILITY CONSIDERING THE LAW THAT WAS IN EFFECT AT THE TIME THE ACTION ACCRUED?

¶46. The record shows that at the time of Decedent's death, Lafayette County had in place a policy of liability insurance on July 12, 1987, the date this case accrued. It is for this Court to determine if there existed a statute at the time this case accrued which authorized Lafayette County to purchase insurance, and if so, whether the statute waived immunity for the county up to the limits of the policy.

¶47. Boston, referring to this Court's ruling in *Winters v. Lumley*, 557 So.2d 1175 (Miss. 1990), contends that the purchase of such a policy was authorized by statute and that sovereign immunity for Lafayette County should be waived up to the amount and extent of the policy limits. *Winters* dealt with Miss. Code Ann. § 19-7-8 (Supp. 1988), which stated in part:

> The board of supervisors of any county is authorized, in its discretion, to purchase general liability insurance coverage for its members and county employees in the official performance of their elective or appointive duties. Said general liability policy shall be written by the agent or agents of a company or companies authorized to do and doing business in the State of Mississippi. The monetary limits of any such policy shall be set by the board of supervisors in amounts they feel are adequate and reasonable in light of existing circumstances. The premiums on such policies shall be paid from the county general fund or from any other available county funds.
>
> **If liability insurance is in effect in such county, such county may be sued by anyone affected to the extent of such insurance carried; provided, however, that immunity from suit is only waived to the extent of such liability insurance carried and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.** No attempt shall

be made in the trial of any case to suggest the existence of any insurance which covers in whole or in part any judgment or award rendered in favor of a claimant, but if the verdict rendered by the jury exceeds the limit of applicable insurance, the court, on motion, shall reduce the amount of said judgment as against the county only and not as to joint tort-feasors, if any, to a sum equal to the applicable limit stated in the insurance policy.[2]

*Id*. at 1177-78 (emphasis added).

¶48. A review of the session laws from the time period in question shows that the pertinent language of Miss. Code Ann. § 19-7-8, as recited in *Winters,* was in effect at the time this action accrued, removing immunity for Lafayette County up to the policy limits that were set out in the insurance policy Lafayette County had purchased. 1985 Miss. Laws ch. 474 §§ 40.

## CONCLUSION

¶49. Based on the forgoing analysis, we affirm as to the issue of venue, and reverse and remand finding that Boston's state law claims are not barred, either by the statute of limitations or by res judicata and collateral estoppel, that defendants Plunk and Theobald are not entitled to quasi-judicial immunity for their failure to schedule Decedent's physical and psychiatric examination within the twenty-four (24) hour period as outlined in the statute, and that Lafayette County is not entitled to sovereign immunity up to the policy limits found in the insurance policy at the time Boston's state law claims occurred. Therefore, we affirm the order of the Hinds County Circuit Court transferring venue to Lafayette County. We

reverse the judgment of the Lafayette County Circuit Court, and we remand this case to that court for a trial consistent with this opinion.

¶50. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**SMITH, P.J., WALLER AND DIAZ, JJ., CONCUR. McRAE, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB AND CARLSON, JJ., NOT PARTICIPATING.**

1. In 1989 § 15-1-49 was changed to a three-year period of limitation. See 1989 Miss. Laws ch. 311, § 3.

2. This statute was repealed by 1992 Miss. Laws ch. 491, §§ 11, eff. October 1, 1993, but is pertinent to this case because of the date this action accrued. Miss. Code Ann. § 19-7-8 (2000).