# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-IA-00320-SCT

*WAYNE GENERAL HOSPITAL, CIRILA REYES, M.D.,  R. KELVIN SHERMAN, M.D., AND WILLIAM E. POWELL, M.D.*

*v.*

*WANDA HAYES, INDIVIDUALLY, AND AS NEXT FRIEND AND NATURAL GUARDIAN OF LATARIUS HAYES, A MINOR ON BEHALF OF ALL WHO ARE ENTITLED TO RECOVER UNDER THE WRONGFUL DEATH AND SURVIVAL STATUTE FOR THE DEATH OF WA'LANDRA MESHA HAYES, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/5/2001 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MATTHEW D. MILLER |
| | ROBERT D. GHOLSON |
| | J. ROBERT RAMSAY |
| ATTORNEY FOR APPELLEES: | GERALD PATRICK COLLIER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED -11/06/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal arises from the Circuit Court of Hinds County, where the trial judge refused to grant the defendants' motion for transfer of venue.  We reverse and remand this action for proceedings consistent with this opinion, finding that:  (1) the discovery rule, as applied to the one-year statute of limitations mandated by the Mississippi Tort Claims Act

("MTCA"), does not apply to wrongful death actions, therefore, plaintiffs' claims against the University of Mississippi Medical Center, Dr. Mark Dabagia, and Dr. Avinash Gulanikar ("UMMC Defendants") were time barred and, as a result, the UMMC defendants were not proper parties to this lawsuit; (2) the trial judge abused his discretion in refusing the defendants' motion to transfer venue since there was no reasonable basis for the plaintiffs' claims against the UMMC defendants; (3) Wayne General Hospital ("WGH") is a community hospital for purposes of the MTCA and is therefore entitled to venue in Wayne County as a matter of right; and (4) the issue of whether the plaintiffs' claims against WGH should have been dismissed is not properly before this Court.

**FACTS**

¶2.     On September 22, 1997, Wa'Landra Mesha Hayes was admitted by Dr. Kelvin Sherman to Wayne General Hospital ("WGH") for twenty-four hour outpatient observation for pneumonia. While at WGH, Wa'Landra exhibited respiratory distress, facial edema, liver enlargement, and signs of renal failure and was thereafter transferred to the UMMC. There is a gap in the record between September 23, 1997, and September 28, 1997. During this time, it is unknown where Wa'Landra was hospitalized and what procedures and medications were given.

¶3.     The UMMC doctors determined that Wa'Landra required a peritoneal dialysis catheter. Dr. Mark Dabagia ("Dr. Dabagia") performed the procedure. Wa'Landra's bowels were perforated, and this resulted in peritonitis. A serious infection then developed in Wa'Landra's blood stream. She was later transferred to Arkansas Children's Hospital in Little Rock, Arkansas.

¶4.    Wa'Landra died on October 13, 1997.  Her death certificate lists cardiomyopathy, congestive heart failure, and sepsis as the causes of death.  The plaintiffs contend that UMMC and its treating physicians contributed to Wa'Landra's death.

¶5.    In the fall of 1999, Wanda Ann Hayes met a former employee of WGH, Venus McDougle.  Venus was a nurse at WGH during the time that Wa'Landra was treated there.  During this chance meeting, Venus alleged that she witnessed negligent care of Wa'Landra at WGH.  Thus, the plaintiffs contacted an attorney and proceeded with a claim.  On December 21, 1999, some 2 years and 2 months after Wa'Landra's death, plaintiffs submitted Notice of Claim letters, as required by the MTCA.  On March 27, 2000, the Plaintiffs filed a complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  The complaint listed the following as defendants: WGH, the UMMC Defendants, Dr. Kelvin Sherman, Dr. William Powell, Dr. Cirila Reyes, and John Doe Persons and Entities.  WHG, Dr. Sherman, Dr. Powell, and Dr. Reyes are all residents of Wayne County.  The UMMC Defendants are all residents of Hinds County.

¶6.    The UMMC Defendants filed a motion for summary judgment claiming lapse of the applicable statute of limitations under the MTCA, denial of negligence, individual immunity, and improper notice under the MTCA.  Both Dr. Dabagia and Dr. Gulanikar submitted affidavits in support of the motion.

¶7.    In response to the defendants' motion for summary judgment, the plaintiffs asserted that they properly complied with the MTCA.   The Plaintiffs submitted an affidavit of Dr. John A. Tilelli.  After a review of the medical records, Dr. Tilelli concluded that WGH, Dr. Sherman, Dr. Reyes, and Dr. Powell had been negligent in their care of Wa'Landra.  However, Dr. Tilelli

3

made no mention of the UMMC Defendants in his affidavit. The plaintiffs also responded with an affidavit of Netra McElroy, a certified nurse practitioner.

¶8.     The plaintiffs subsequently agreed to dismiss the UMMC Defendants from this action. As a result, the trial entered an Agreed Order of Dismissal Without Prejudice as to the UMMC Defendants. After the dismissal, WGH, joined by Dr. Sherman and Dr. Powell, moved to transfer venue. The trial court denied the motion.

¶9.     On February 22, 2001, the defendants, WGH, Dr. Reyes, Dr. Sherman, and Dr. Powell, filed a Petition for Interlocutory Appeal which we granted. *See* M.R.A.P. 5

## DISCUSSION

I.      **THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, DR. MARK DABAGIA, AND DR. AVINASH GULANIKAR WERE NEVER PROPER PARTIES TO THIS LAWSUIT SINCE ANY CLAIMS AGAINST THEM WERE BARRED BY THE ONE YEAR STATUTE OF LIMITATIONS PROVIDED BY MISS. CODE ANN. § 11-46-11(3).**

¶10.    This Court applies the de novo standard of review when deciding issues of law. *ABC Mfg. Corp. v. Doyle*, 749 So. 2d 43, 45 (Miss. 1999). The "application of a statute of limitations is a question of law." *Sarris v. Smith*, 782 So. 2d 721, 723 (Miss. 2001). Therefore, the de novo standard applies to our review of WGH's first assignment of error.

¶11.    Defendants WGH, Dr. Sherman, Dr. Powell, and Dr. Reyes argue that venue in Hinds County was never proper since all claims against the UMMC Defendants were barred by the one year statute of limitations provided for in the MTCA. Additionally, they assert that the discovery rule is not applicable because there was no latent injury and the Plaintiffs were not reasonably diligent in attempting to investigate the cause of Wa'Landra's death.

4

¶12.     Plaintiffs, Wa'Landra's heirs, argue that venue in Hinds County was always proper since the discovery rule was applicable to all claims against the UMMC Defendants, tolling the statute of limitations until the plaintiffs discovered the alleged negligence and omissions in the fall of 1999. Furthermore, they argue that the discovery rule applies in this case since the acts or omissions causing the injuries resulting in Wa'Landra's death were latent and could not have been discovered.

¶13.     The Mississippi Tort Claims Act ("MTCA") sets out certain requirements that a plaintiff must satisfy in bringing a claim against a government entity or its subdivisions. At least ninety days before filing suit, a plaintiff must file a notice of claim with the chief executive officer of the government entity. Miss. Code Ann. § 11-46-11(1) (Rev. 2002). In addition, the MTCA provides a one-year statute of limitations that begins to run from the date of the "tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." *Id*. § 11-46-11(3).

¶14.     This Court has held that a discovery rule applies to the one-year statute of limitations mandated by the MTCA. ***Moore ex. rel. Moore v. Mem'l Hosp. of Gulfport***, 825 So. 2d 658, 667 (Miss. 2002) (citing ***Barnes v. Singing River Hosp. Sys.***, 733 So. 2d 199, 204 (Miss. 1999)). The discovery rule will toll the statute of limitations "until a plaintiff 'should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent.'" ***Id.*** (quoting ***Sarris v. Smith***, 782 So.2d at 725). Stated differently, "'the operative time [for the running of the statute of limitations] is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical

practitioner.'" ***Id.*** (quoting ***Smith v. Sanders***, 485 So.2d 1051, 1052 (Miss. 1986)). However, we have also held that "[t]he discovery rule applies to **latent** injuries and by its definition, can have no effect with regard to injuries which are not latent." ***Chamberlin v. City of Hernando***, 716 So. 2d 596, 606 (Miss. 1998) (emphasis in original). Moreover, we have expressly stated that "an action for the death of a person accrues on the date of the person's death." ***Id.*** (quoting ***Sweeney v. Preston***, 642 So. 2d 332 (Miss. 1994)).

¶15. In ***Gentry v. Wallace***, 606 So. 2d 1117 (Miss. 1992), this Court decided a case where the alleged negligence which caused the death was learned of before the death actually occurred. ***Id.*** In interpreting a different statute of limitations than the one included in the MTCA, the Court stated, "[t]he most basic fact a wrongful death plaintiff must know in order to be aware that he is entitled to 'bring an action' is that a death has occurred." ***Gentry***, 606 So. 2d at 1122. The Court held the statute of limitations begins running on the date of death, not on the date of discovery of the alleged misconduct. ***Id***. This rationale is followed in ***Sweeney***. "[W]e rejected the notion that a wrongful death claim accrued when the negligent act was discovered ... Rather, we found that the statute of limitations is triggered by death[.]" ***Sweeney***, 642 So. 2d at 335.

¶16. Defendants argue that death is not a latent injury; and therefore, the requisite statutory period began on the date of Wa'Landra's death and the commencement of any actions against them is time-barred. We agree. Clearly, death is not a latent injury; it is not a wound which cannot be discovered using reasonable care for months or years. It is lamentably obvious to the survivors at the time it occurs. The intent of this rule is to allow a potential plaintiff time

6

to recognize the fact that he or she has been injured. Wa'Landra's death was an obvious injury; it was not the undiscoverable damage the rule seeks to prevent. As such, an action for wrongful death should not be given the benefit of the discovery rule.

¶17.    To claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury. "The focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." *Smith v. Sanders*, 485 So. 2d at 1052. There is no indication that the plaintiff's took any investigative action whatsoever. Indeed, the plaintiff's realization that there may have been an actionable injury was the result of a chance meeting. The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them. In this case, the injury, death, is all too apparent, and there is no indication the plaintiffs used reasonable diligence to investigate the injury. Also, given that the death certificate included sepsis as one of the causes of death, it should have been apparent to the plaintiffs that more investigation was needed. Additionally, Wa'Landra was hospitalized at Arkansas Children's Hospital subsequent to the bowel perforation which allegedly occurred at the University of Mississippi Medical Center; this should have alerted her survivors of possible problems with her medical treatment.

¶18.    Because death is not a latent injury, the plaintiffs in this case may not benefit from the protections afforded by the discovery rule as applied to the MTCA one-year statute of limitations. The plaintiffs filed their action against the UMMC defendants after the expiration of the MTCA statute of limitations. Thus, the plaintiffs' action against the UMMC Defendants was time barred, and the UMMC Defendants were never proper parties to this action.

**II. VENUE CANNOT REMAIN IN HINDS COUNTY SINCE THE PLAINTIFFS ONLY JOINED THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, DR. MARK DABAGIA, AND DR. AVINASH GULANIKAR FOR THE PURPOSE OF FIXING VENUE IN HINDS COUNTY.**

¶19.    The defendants argue that this action should not have remained in Hinds County after the dismissal of the UMMC Defendants.  First, the defendants contend that the plaintiffs had no reasonable claim of liability against the UMMC Defendants.  Moreover, the Defendants argue the UMMC Defendants were joined for no other purpose but to fix venue of this action in Hinds County.

¶20.    Plaintiffs argue that at the time of filing they asserted valid claims against the UMMC Defendants and at all times believed they had a good faith claim against these defendants.  Plaintiffs further argue that venue is determined at the time of filing, therefore venue was proper in Hinds County at the time of filing and is still proper even after the claims against these defendants were dismissed.  Additionally, they argue that the voluntary dismissal does not change the rule that venue is determined at time of filing.

¶21.    In reviewing a trial court's ruling on a motion to change venue, this Court applies the abuse of discretion standard.  *Guice v. Miss. Life Ins. Co.*, 836 So. 2d 756, 758 (Miss. 2003).  A trial judge's ruling on such an application "will not be disturbed on appeal unless it clearly appears that there has been an abuse of sdiscretion or that the discretion has not been justly and properly exercised under the circumstances of the case."  *Id.*

¶22.    Rule 82(b) of the Mississippi Rules of Civil Procedure provides that "[e]xcept as provided by this  rule, venue of all actions shall be as provided by statute."  Miss. Code Ann. § 11-11-3(1)  provides that "[c]ivil actions of which the circuit court has original jurisdiction

8

shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue." Moreover, "proper venue is determined at the time the lawsuit is originally filed, and subsequent dismissal of the defendant upon whom venue is based does not destroy proper venue." *Estate of Jones v. Quinn*, 716 So.2d 624, 628 (Miss. 1998) (citing *Blackledge v. Scott*, 530 So.2d 1363, 1365 (Miss. 1988)).

¶23. In *Estate of Jones*, we concluded that "[i]n suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants. This is true where the defendant upon whom venue is based is subsequently dismissed from the suit." *Estate of Jones*, 716 So.2d at 627. Moreover, in such cases, "venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only." *Id.* However, we have also held:

> Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists – [1] the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; [2] the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; [3] and there was a reasonable claim of liability asserted against the resident defendant.

*Estate of Jones*, 716 So.2d at 627 (citing *New Biloxi Hosp., Inc. v. Frazier*, 245 Miss. 185, 146 So.2d 882, 885 (1962)). When determining whether fraud was involved in the joining of defendants "the proper question is not whether the plaintiff's attorney intended to fraudulently establish venue, but whether the facts support inclusion of the defendant upon whom venue is based." *Estate of Jones*, 716 So.2d at 628 (citing *Jefferson v. Magee*, 205 So.2d 281, 283

9

(Miss. 1967)). The defendants argue that the plaintiffs had no reasonable claim of liability against the UMMC Defendants and therefore fail to satisfy the third prong of the *Frazier* test. We agree.

¶24. This Court has held:

> [I]n order to prevail in a medical malpractice action, a plaintiff must establish, by expert testimony, the standard of acceptable professional practice; that the defendant physician deviated from that standard; and that the deviation from the standard of acceptable professional practice was the proximate cause of the injury of which plaintiff complains.

*Brown v. Baptist Mem'l Hosp. DeSoto, Inc.*, 806 So. 2d 1131, 1134 (Miss. 2002) (citing *Phillips ex rel. Phillips v. Hull*, 516 So. 2d 488, 491 (Miss. 1987)). *See also **Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1355 (Miss. 1990).

¶25. Here, in response to the UMMC Defendants' motion for summary judgment, the Plaintiffs responded with two affidavits. The first witness, Netra McElroy, was at the time a certified Family Nurse Practitioner and Clinical Nurse Specialist. We have held that a nurse is not qualified to testify as to the causal nexus between death and an alleged deviation from the standard of care. *Richardson v. Methodist Hosp. of Hattiesburg, Inc.*, 807 So. 2d 1244, 1247-48 (Miss. 2002). Moreover, the plaintiffs' second witness, Dr. John Tilelli, made no mention of the UMMC Defendants or their alleged negligence in his affidavit.

¶26. Instead of moving forward, the plaintiffs voluntarily dismissed their claims against the UMMC Defendants. The logical inference is that the plaintiffs' claims against the UMMC Defendants were not capable of withstanding a motion for summary judgment. If the plaintiffs' claims could not survive a motion for summary judgment, as is obviously the case here, then they clearly failed to assert a reasonable claim of liability against the UMMC Defendants.

10

Thus, the plaintiffs failed to satisfy the third prong of the *Frazier* test. The trial judge therefore clearly erred in concluding that venue was proper in Hinds County after the voluntary dismissal of the UMMC Defendants. Furthermore, it is clear that the trial judge abused his discretion in refusing the defendants' application for a change of venue.

### III. WAYNE GENERAL HOSPITAL IS A "COMMUNITY HOSPITAL " UNDER THE MISSISSIPPI TORT CLAIMS ACT ENTITLING IT TO EXCLUSIVE VENUE IN WAYNE COUNTY.

¶27. The defendants argue that under Miss. Code Ann. § 41-13-10, WGH is a 'community hospital" as defined in the MTCA. Hospitals and physicians protected by the MTCA enjoy their own unique venue statute provided for in Miss. Code Ann. § 11-46-13(2). The defendants argue that under Miss. Code § 11-46-13(2) the only proper venue is Wayne County, Mississippi.

¶28. Plaintiffs argue that Miss. Code Ann. § 11-46-13(2) does not preclude other venues. They argue that the statute does not provide for only one venue; therefore, venue may be determined by Miss. Code Ann. § 11-11-3(1).

¶29. The MTCA provides the exclusive remedy for suits and claims asserted against the state and its political and corporate subdivisions. Miss. Code § 11-46-1(g) defines the term "governmental entity" to include "state and political subdivisions as herein defined." For purposes of the MTCA,

> "Political subdivision" means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, **community hospital as defined in Section 41-13-10, Mississippi Code of 1972**, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

11

Miss. Code Ann. § 11-46-1(i) (2002) (emphasis added).  According to Miss. Code Ann. § 41-13-10(c) (2001),

> "Community hospital" shall mean any hospital, nursing home and/or related health facilities or programs, including without limitation, ambulatory surgical facilities, intermediate care facilities, after-hours clinics, home health agencies and rehabilitation facilities, established and acquired by boards of trustees or by one or more owners which is governed, operated and maintained by a board of trustees.

Miss. Code Ann. § 11-46-7(1)  provides the exclusive remedy "against the governmental entity or its employees or the estate of the employee for the act or omission which gave rise to the claim or suit."  Furthermore, "any claim made or suit filed against a governmental entity or its employee to recover damages for any injury . . . shall be brought only under the provisions of this chapter; notwithstanding the provisions of any other law to the contrary."  Id.  The MTCA venue statute reads as follows:

> The venue for any suit filed under the provisions of this chapter against the state or its employees shall be in the county in which the act, omission or event on which the liability phase of the action is based, occurred or took place.  The venue for all other suits filed under the provisions of this chapter shall be in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located.  The venue specified in this subsection shall control in all actions filed against governmental entities, notwithstanding that other defendants which are not governmental entities may be joined in the suit, and notwithstanding the provisions of any other venue statute that otherwise would apply.

Miss. Code Ann. § 11-46-13(2).  The second sentence of this statute "controls only in 'all other suits filed under the provisions of this chapter,' meaning all suits other than those filed against state employees." *Estate of Jones*, 716 So. 2d at 628.

¶30.    This Court has held that where a plaintiff sues a county, the only proper venue is that county:

12

There is sound reason for requiring a county to be sued in the county, or in the court which sits at the county site and has jurisdiction of the suit. A county can only act through it's officers, and these officers are charged with various duties for the public welfare. In defending suits against counties, the officers might be taken out of the county or called away from their public duties and the public interests would suffer in many cases by reason of their absence from the duties while attending court in other places than at the county site. The records might often have to be carried away from the county site, if such suits were maintained, to the place where the suit was tried and would endanger the safety of the said records and discommode the safety of the said records and discommode the public who might desire to resort to the records for any lawful purpose for which they are made and used.

*Boston v. Hartford Acc. & Indem. Co.*, 822 So. 2d 239, 24 (Miss. 2002) (quoting *City of Jackson v. Wallace*, 189 Miss. 252, 196 So. 223, 224-25 (1940)).

¶31. Here, it is clear that venue was proper only in Wayne County. First, WGH is, as the plaintiffs put it, "a creature of the state of Mississippi." According to WGH, it is "a hospital institution owned and operated by Wayne County and its Board of Supervisors and thus is a political subdivision of the state of Mississippi." Thus, there is no dispute that the MTCA applies to WGH. In addition, the plaintiffs do not dispute that WGH is a "community hospital" for purposes of the MTCA.

¶32. The MTCA is clear on this point: where a plaintiff files suit against an MTCA-protected public entity other than the state of Mississippi or its employees, venue is proper only in the "county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located." As we concluded in *Estate of Jones*, this portion of Miss. Code Ann. § 11-46-13(2) refers to all suits other than those filed against state employees. The plaintiffs do not allege that WGH is a state employee, and the record shows that WGH is a political subdivision of Wayne County, Mississippi. Thus, the second sentence of Miss. Code

Ann. § 11-46-13(2) applies to this case. Having determined that Hinds County was never a proper venue for this action, we conclude that the only proper venue for the plaintiffs' action against WGH is Wayne County, Mississippi.

**IV. THE PLAINTIFFS' CLAIMS AGAINST WAYNE GENERAL HOSPITAL SHOULD HAVE BEEN DISMISSED BY THE CIRCUIT COURT JUDGE SINCE NO NOTICE OF CLAIM WAS TIMELY FILED AND ANY CLAIMS ARE BARRED BY THE ONE YEAR STATUTE OF LIMITATIONS UNDER MISS. CODE § 11-46-11(3).**

¶33. Defendants argue that the circuit court judge erred in refusing to grant their motion to dismiss. According to the defendants, the plaintiffs failed to timely submit a Notice of Claim under Miss. Code § 11-46-11(1). They further argue that under Miss. Code § 11-46-11(3) the Notice of Claim and any cause of action must be commenced within one year after the date of the alleged acts of negligence or omissions.

¶34. Plaintiffs argue that the circuit court judge did not err in his refusal to grant the defendants' motion to dismiss. They argue that the defendants failed to raise this argument in their Petition for Interlocutory Appeal and are therefore precluded from raising the issue now. Furthermore, plaintiffs argue that the statute of limitations provided for in Miss. Code § 11-46-11(3) is subject to the discovery rule, therefore the statute of limitations on their action did not begin until the fall of 1999. Moreover, plaintiffs argue that the trial judge reserved ruling on the motion - that is, the trial judge did not rule on the motion.

¶35. The defendants acknowledge that they failed to raise this issue on appeal. However they cite *Tinnon v. Martin*, 716 So.2d 604, 613 (Miss. 1998), where the Court addressed a defendant's constitutional argument that was not raised on appeal in order to promote judicial economy in the courts. They argue that in the interest of judicial economy this Court should

14

consider this issue on appeal. However, it is clear that this issue is not properly before the Court. Under our Rules of Appellate Procedure, a party requesting permission to take interlocutory appeal must submit a petition which

> shall contain a statement of the facts necessary to an understanding of the question of law determined by the order of the trial court; **a statement of the question itself**; and a statement of the reasons why the certification required by Rule 5(a) properly was made or should have been made.

M.R.A.P. 5(b) (emphasis added). The defendants concede that they did not include this assignment of error in their Petition for Interlocutory Appeal. We are therefore procedurally barred from deciding this issue.

## CONCLUSION

¶36. We conclude that the learned trial judge abused his discretion in denying the defendants' motion to transfer venue. First, the discovery rule, as applied to the MTCA one-year statute of limitations, is inapplicable to wrongful death cases since death is not a latent injury. As a result, the plaintiffs' claims against the University of Mississippi Medical Center, Dr. Mark Dabagia, and Dr. Avinash Gulanikar ("UMMC Defendants") were time-barred. Thus, the UMMC Defendants were never proper parties to this lawsuit. Second, venue is improper in Hinds County as to the remaining defendants because the plaintiffs failed to assert a reasonable claim of liability against the UMMC Defendants; therefore, pursuant to *Frazier*, venue is not proper in Hinds County as to the remaining defendants since the resident UMMC Defendants have been dismissed. Third, Wayne General Hospital is a community hospital for purposes of the MTCA and is therefore entitled to venue in the county in which the principal offices of its governing body are located, i.e., Wayne County. Finally, we decline to pass on whether WGH's

15

motion for dismissal should have been granted since that issue is not properly before this Court. Therefore, we reverse the trial court's order denying the defendants' motion to transfer venue, and we remand this case to the trial court with directions that it promptly transfer the venue of this case to the Circuit Court of Wayne County for further proceedings consistent with this opinion.

¶37. **REVERSED AND REMANDED.**

**WALLER, COBB AND CARLSON, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶38. The majority erroneously finds that the claims asserted by the plaintiffs are barred by the applicable statute of limitations. Under the discovery rule, the claims against the University of Mississippi Medical Center, Dr. Mark Dabagia, and Dr. Avinash Gulanikar were not barred by the one-year statute of limitations. The statute did not begin to run until the fall of 1999 when Wanda Ann Hayes became aware of the negligence that caused the death of Wa'Landa Mesha Hayes. As to the issue of venue, it is a well-settled rule that venue is established at the time of the filing of the lawsuit and subsequent dismissal of defendants does not affect venue if "the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; and there was a reasonable claim of liability asserted against the resident defendant." *Estate of Jones v. Quinn*, 716 So.2d 624, 627-28 (Miss. 1998) (citing

16

*New Biloxi Hosp., Inc. v. Frazier*, 245 Miss. 185, 146 So.2d 882, 885 (1962)). *See also*

*Dukes v. Sanders*, 239 Miss. 543, 125 So.2d 294 (1960); *Forman v. Mississippi Publishers*

*Corp.*, 195 Miss. 90, 14 So.2d 344 (1943); *Howard v. Ware*, 192 Miss. 36, 3 So.2d 830

(1941); *Read v. Renaud*, 14 Miss. (6 Smedes & M.) 79 (1846)). For these reasons, I dissent

since the order of the trial court denying the defendants' request for dismissal and change of

venue should be affirmed.

¶39.    In order to clarify the history which supports a finding that the discovery rule is

applicable to the Plaintiff's claims, it is first necessary to provide a short recital of those facts

which turn upon this issue.

(1)    On September 22, 1997, Wa'Landra Mesha  Hayes ("Wa'Landra") was admitted by Dr. Kelvin Sherman ("Dr. Sherman") to Wayne General Hospital ("WGH") for twenty-four hour outpatient observation for pneumonia.  Wa'Landra's condition quickly worsened.  While in WGH, Wa'Landra was given high doses of KCL (Potassium Chloride, which is a diuretic that promotes the formation of urine by the kidney), without blood work.

(2)    On September 28, 1997, Wa'Landra exhibited respiratory distress, facial edema, liver enlargement, and signs of renal failure and was thereafter transferred to the University of Mississippi Medical Center ("UMMC").  WGH had documented the need for Wa'Landra's transfer days before they actually instituted the transfer.

(3)    There is a gap in the record between September 23, 1999 and September 28, 1999.  During this time, it is unknown where Wa'Landra was hospitalized and what procedures and medications were given.  Appellant's Brief claims Wa' Landra was transferred to UMMC on September 24, 1997.

(4)    On September 29, 1999, UMMC physicians elected to install a peritoneal dialysis catheter in Wa'Landra.  Dr. Mark Dabagia ("Dr. Dabagia")performed the procedure which took two insertions.   No consent was given to Dr. Dabagia to perform the procedure.  Wa'Landra's

17

bowels became perforated which resulted in peritonitis causing a serious infection in her blood stream.

(5)     Wa'Landra was later transferred to Arkansas Children's Hospital in Little Rock, Arkansas. There are no medical records in the record for this time.

(6)     Wa'Landra Mesha died as a result of cardiomyopathy, congestive heart failure, and sepsis.

(7)     In the fall of 1999, Wanda Ann Hayes ("Wanda Ann"), one of the Heirs, became aware of the negligent acts and omissions after an encounter with Venus McDougle ("Venus") in a local grocery store. At the time of Wa'Landra's stay in WGH, Venus was a nurse at WGH.

(8)     Wa'Landra's heirs then consulted an attorney.

(9)     Two years and two months after her death, Wanda Ann Hayes and Latarius Hayes served a Notice of Claim under the Mississippi Tort Claims Act upon the administrator of Wayne General Hospital and the Vice Chancellor of Health Affairs at the University of Mississippi Medical Center.

(10)    Thereafter, the plaintiffs filed a complaint in the Circuit Court of Hinds County, Mississippi, First Judicial District, naming Wayne General Hospital; University of Mississippi Medical Center; Dr. Kelvin Sherman; Dr. William Powell; Dr. Cirila Reyes, Dr. Mark Dabagia, and Dr. Avinash Gulanikar. Affidavits were submitted by Netra McElroy ("Netra"), a Nurse Practitioner and Clinical Nurse Specialist, Venus, and Wanda Ann.
  In her affidavit, Netra stated that particular acts and omissions (deviations from the standard of care) of UMMC, Dr.Gulanikar, and Dr. Dabagia caused and/or contributed to the death of Wa' Landra. In Venus' affidavit, she detailed her observations of negligent care and set out the story of how Wanda Ann came to discover the negligence and omissions through a conversation with her in the grocery store. Wanda Ann's affidavit described the encounter with Venus and how she came to discover the negligence and omissions that contributed to her daughter's death.

(11)    The Plaintiffs voluntarily dismissed all claims against the Hinds County defendants which included University of Mississippi Medical Center, Dr. Mark Dabagia, and Dr. Avinash Gulanikar.

(12)   The remaining Defendants filed Motions to Dismiss and/or Summary Judgment and a Motion to Transfer Venue.

(13)   In responding to these Motions, the Plaintiffs submitted the affidavit of Dr. John A. Tilelli ("Dr. Tilelli") who after reviewing the medical records rendered an opinion finding WGH, Dr. Sherman, Dr. Reyes, and Dr. Powell had been negligent in their care of Wa'Landra.

(14)   Ultimately, the Circuit judge denied the Defendant's Motions to Dismiss and/or Summary Judgment and the Motions to Transfer Venue.

¶40.   Based upon these facts and the applicable law, the circuit court's order denying the defendants' motion to dismiss and/or summary judgment and motion to transfer venue should be affirmed.

I.   THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, DR. MARK DABAGIA, AND DR. AVINASH GULANIKAR WERE NEVER PROPER PARTIES TO THIS LAWSUIT SINCE ANY CLAIMS AGAINST THEM WERE BARRED BY THE ONE YEAR STATUTE OF LIMITATIONS PROVIDED BY MISS. CODE § 11-46-11(3).

¶41.   The majority erroneously finds that the claims asserted against the defendants were barred by the one-year statute of limitations provided in the MTCA.

¶42.   Title 11, Chapter 46, commonly referred to as the MTCA, contains the requisite requirements and statute of limitations periods for claims brought against a government entity and its subdivisions. Miss. Code Ann. § 11-46-11(1) sets out the Notice of Claim requirements which includes the filing of a notice of claim with the chief executive officer of the government entity 90 days before the filing of a formal complaint bringing suit.  Miss. Code § 11-46-11(3) provides a one-year statute of limitations running from the date of the "tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based."

¶43. There is no dispute that plaintiffs filed a Notice of Claim via certified mail on the Vice Chancellor of Health Affairs at UMMC. " '[C]hief executive officer of the governmental entity,' with whom notice of claim must be filed, may be read to include any of the following: president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board of commission who can be reasonably expected to notify the governmental entity of its potential liability." *Reeves ex rel. Rouse v. Randall*, 729 So.2d 1237, 1240 (Miss. 1998). Certainly a Vice Chancellor of Health Affairs meets this requirement. The Notice is marked received on December 27, 1999, and indicates that the applicable date of discovery of the alleged malpractice was December 17, 1999. The notice complies with the requisite requirements of Miss. Code Ann. § 11-46-11(1).

¶44. It is true that the applicable statute of limitations is the one-year statutory period set out in Miss. Code Ann. § 11-46-11(3). However, this statutory period is subject to the Discovery Rule. In *Barnes v. Singing River Hosp. Systems*, 733 So.2d 199, 205 (Miss. 1999), this Court established that the discovery rule applies to the statute of limitations governing actions involving latent injuries against state agencies. *See also **Henderson v. Un-Named Emergency Room, Madison County**, 758 So.2d 422, 427 (Miss. 2000) (holding discovery rule tolled the statute of limitations where the plaintiff was unaware of eye injuries caused by physicians medical negligence until three years after the negligent acts); *Pickens v. Donaldson*, 748 So.2d 684, 690 (Miss. 1999) (holding discovery rule tolled the statute of limitations since the plaintiff had no way of knowing that physician's negligence caused injury until medical records were reviewed by a medical expert); *Robinson v. Singing River Hosp. Sys.*, 732 So.2d 204, 207 (Miss. 1999) (holding that the discovery rule was inapplicable to a

non-latent injury were defendant received second degree burns from hot packs during physical therapy); ***Chamberlin v. City of Hernando***, 716 So.2d 596, 601 (Miss. 1998) (holding that discovery rule inapplicable to non-latent injury of death where EMT ordered the cease of CPR on individual)).  Essentially, the discovery rule means  "the operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." ***Sarris v. Smith***, 782 So.2d 721, 723 (Miss. 2001) (quoting ***Smith v. Sanders***, 485 So.2d 1051, 1052 (Miss. 1986)).  *See also **United States v. Kubrick***, 444 U.S. 111, 119, 100 S.Ct. 352, 62 L. Ed. 259 (1979) (interpreting the Federal Tort Claims Act to focus not upon when the plaintiff actually discovered that legally he had a cause of action, but upon when he discovered, or should have discovered, that he had an injury and the cause of such injury giving him sufficient knowledge to inquire as to whether he ha a cause of action); ***Battle v. Mem'l Hosp. at Gulfport***, 228 F.3d 544, 556 (5th Cir. 2000) (holding under the Mississippi Tort Claims Act, the discovery rule applies to latent injuries and provides that the one year statute of limitations on a tort claim begins when the party is aware of the injury and that an act or omission of the negligent party caused the injury)); ***Waits v. United States***, 611 F.2d 550, 552 (5th Cir. 1980) (holding that under the Federal Tort Claims Act it is not enough that the claimant be aware of his injuries if he is unaware of the act or omission that caused the injuries); ***Kilgore v. Barnes***, 508 So.2d 1042, 1043 (Miss. 1987) (holding statute of limitations did not bar malpractice suit over surgical needle left in lining of plaintiff's heart in 1974 but not discovered by plaintiff until 1982); ***Sweeney v. Preston***, 642 So.2d 332, 334 (Miss. 1994) (holding discovery rule

inapplicable where infants death was known to be caused by physician's failure to diagnosis RH factor during mother's pregnancy); **Barnes**, 733 So.2d at 205 (holding that the statute of limitations against a state hospital did not begin to run until the patient's medical expert notified patient's attorney of possible negligence, although patient may have been aware of injuries before the one year time limit was up, as she could not reasonably have known that hospital was responsible for those injuries until that date).

¶45.    "[K]nowledge that there exists a causal relationship between the negligent act and the injury or disease complained of is essential because 'it is well established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action' " **Barnes**, 733 So.2d at 204 (citing **Sweeney**, 642 So.2d at 334) (quoting **Williams v. Kilgore**, 618 So.2d 51, 55 (Miss. 1993)). *See also Ayo v. Johns-Mansville Sales Corp.*, 771 F.2d 902, 907 (5th Cir. 1985) (holding discovery rule inapplicable where Louisiana's legislature had enacted a specific statute of limitations for all absbestos claims).   "[W]here the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury and in such cases the action does not accrue until the latter discovery is made." **Barnes**, 733 So.2d at 206 (citing **Smith**, 485 So.2d at 1052-53). *See also* **Henderson**, 758 So.2d at 427 (holding discovery rule applied where plaintiff was aware of his blindness, the injury, but was unaware that physicians negligence had caused the injury); **Pickens**, 748 So.2d at 690 (holding that plaintiff was aware of injuries but could not be aware of the cause of such injuries until medical records were reviewed by an expert)).

¶46. The majority erroneously holds that death is not a latent injury and therefore the requisite statutory period began to run on the date of Wa'Landra's death making the commencement of any actions against the defendants barred by the statute of limitations. The majority relies on *Robinson*, *Chamberlin*, and *Sweeney* in support of its proposition that death is never a latent injury and an action for death accrues on the date of death.

¶47. The plaintiffs argue that the death of Wa' Landra is only incidental to latent injuries that were undiscoverable by her heirs until the Fall of 1999. The latent injuries complained of are liver and cardiac complications and perforated bowels which contributed to the death of Wa' Landra. These injuries were not known to the plaintiffs when they occurred or upon Wa'Landra's death. These latent injuries were allegedly the result of both WGH's administration of potassium chloride without proper blood testing and UMMC's negligent insertion of a dialysis catheter. They argue that under the discovery rule the statute of limitations began in the Fall of 1999; therefore their claim is not barred. Plaintiffs rely on *Williams*, *Pickens*, and *Smith* in support of their propositions.

¶48. In *Robinson*, we found that the MTCA one-year statute of limitations was not affected by the discovery rule when a non-latent injury existed where the plaintiff had suffered second degree burns from a hot pack during physical therapy. 732 So.2d at 207-08. We reasoned that the second degree burns could not be latent since the plaintiff knew of his injuries and had reason to suspect negligence as the cause of such injuries and did not bring a claim within the prescribed statutory period. *Id.* *Robinson* is different than the present action in that the plaintiffs here had no knowledge of any latent injury. These plaintiffs only knew that Wa'Landra died of cardiomyopathy, congestive heart failure, and sepsis. There were no

indications of negligence to cause these heirs to investigate. It was only upon a chance happening with Venus that the plaintiffs discovered that Wa'Landra was not provided the normal standard of care. Then they investigated and discovered the negligence and omissions causing injury that resulted in her death. Here the death is not the injury. The death is the result of the injury. The injuries in the present case are cardiac and liver complications and perforated bowels caused by medical negligence.

¶49.    In *Sweeney* we addressed the applicability of the discovery rule as applied to instances of death. 642 So.2d at 335. This Court concluded that "**the limitations period does not begin to run until the heir knows or should reasonably know about the medical negligence which caused the death**." *Id.* (quoting *Gentry v. Wallace*, 606 So.2d 1117, 1119 (Miss. 1992)) (emphasis added). These plaintiffs did not discovered the medical negligence causing the injuries to Wa'Landra until the fall of 1999. The plaintiffs did not know of these negligent injuries at the time they occurred or at the time of Wa'Landra's death. There was no indication of negligence to investigate until the revelations brought out by Venus.

¶50.    In *Chamberlin*, we found that discovery rule inapplicable where the plaintiffs brought suit over an EMT ordering the cessation of cardiopulmonary resuscitation (CPR). 716 So. 2d at 601-02. In that case, the plaintiffs knew the death was due to the cessation of CPR. *Id.* The plaintiffs in the present action only knew that a death had occurred. They had no knowledge as to the cause of death and no reason to suspect negligence had played a role in Wa'Landra's death.

¶51.    The majority finds that under *Chamberlin*, "death" is never a latent injury. Such a broad and sweeping conclusion is not supported by our holding in *Chamberlin* as the facts in that

24

case clearly supported a finding that under the circumstances the death and the cause of the death were known to the plaintiffs. Under the present facts, Wanda Ann and the heirs of Wa'Landra were not aware of the cause of death until the Fall of 1999 when Wanda Ann had a happenstance encounter with Venus. As we have stated repeatedly, "where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury and in such cases the action does not accrue until the latter discovery is made." *Barnes*, 733 So.2d at 206 (citing *Smith*, 485 So.2d at 1052-1053). *See also Henderson*, 758 So.2d at 427 (holding discovery rule applied where plaintiff was aware of his blindness, the injury, but was unaware that physicians negligence had caused the injury); *Pickens*, 748 So.2d at 690 (holding that plaintiff was aware of injuries but could not be aware of the cause of such injuries until medical records were reviewed by an expert)). "[K]nowledge that there exists a causal relationship between the negligent act and the injury or disease complained of is essential because 'it is well established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action' " *Barnes*, 733 So.2d at 204 (citing *Sweeney*, 642 So.2d at 334) (quoting *Williams*, 618 So.2d at 55). *See also Ayo*, 771 F.2d at 907 (holding discovery rule inapplicable where Louisiana's legislature had enacted a specific statute of limitations for all absbestos claims)). As one can clearly see, the facts of *Chamberlin*, where we held the decedent's death not to be a latent injury are wholly distinguishable.

¶52. Furthermore, our holding in *Chamberlin* did not establish a per se rule that death is not a latent injury. Such a rule, would go against the very grain of the purpose of the latent injury

rule, if a plaintiff was forbidden to pursue an action for the death of a loved one when the evidence clearly established that she had no knowledge that the cause of death was caused by the negligence of someone else.

¶53.    In *Williams*, we found the discovery rule applicable where a physician left a needle in a body and it went undiscovered for 21 years. 618 So.2d 51. There we found that the plaintiff was unable to know of the negligence and only knew of the injury. *Id.* at 55. This is similar to the plaintiffs' case since Wa'Landra's death was known but her heirs were unable to know that her death was caused by injuries she sustained due to medical negligence. It was only upon Venus's comments to Wanda Ann that negligence was suspected in the death. After their conversation, Wanda Ann promptly investigated the medical records and consulted an attorney on the matter. It was then discovered by a consulting physician and verified by Venus that the standard of care given to Wa'Landra was below applicable standards and resulted in cardiac and liver complications resulting in her death.

¶54.    In *Pickens*, we found the discovery rule applicable where a plaintiff knew of his injuries but could not be expected to know of the cause of such injuries until a medical expert notified him and his attorney of the negligence. 748 So.2d at 690. We found that the cause of the injuries were undiscoverable until close review revealed the negligence. *Id.* This is similar to the facts of the present case. Here, the plaintiffs knew of the death but had no way to discover the injuries or negligence causing the death until Venus came forward with information and that information was reviewed by an independent physician. Upon investigation, the negligence was promptly discovered.

¶55.    In the two most recent cases on this issue, we held the discovery rule applicable. In *Henderson*, we held the discovery rule applicable where blindness was caused by the medical negligence of a physician and was discovered one year after treatment but the cause of the blindness was not discovered until over two years after treatment.  758 So.2d at 422.  We found that there was no way to definitely know the cause of injury at the time the injury was discovered. *Id.* It was only upon further investigation that the cause of the blindness was revealed. *Id.*  Additionally, we found in *Sarris* found that the one year statute of limitation for the Mississippi Tort Claims Act did not being to run until 9 months after the death when the widow was first allowed to access his medical records.  782 So.2d 725.  There we found that it was impossible for the widow to investigate or discover the cause of her husband's death until his medical records were made available for review.  *Id.* We stated "[t]he discovery rule should have been applied to toll the statute of limitations, because while Sarris knew that her husband was dead, under the facts of this case, she could not reasonably have known that the death was the result of negligence." *Id.* at 723.

¶56.    The defendants argue and the majority finds that Wanda Ann and the heirs failed to "reasonably and diligently" investigate the cause of death of Wa'Landra.  Both the defendants and the majority rely on *Smith* in arguing that in order to seek refuge in the discovery rule one must have been reasonably diligent in attempting to investigate and discover acts of negligence resulting in injury.  485 So. 2d 1052.  The evidence presented by Wanda Ann and the heirs show that there was no reason to suspect negligence until the revelation by Venus.  Furthermore, affidavits submitted by Venus and Dr. Tilelli corroborate their story.  Once

27

plaintiffs learned of potential negligence, they diligently pursued their investigation and claims against the defendants.

¶57.    The discovery rule is entirely applicable to the present case.  Here we have a child who developed illness which rapidly progressed.  Her condition deteriorated rapidly and she died within one month of admittance to a hospital.  There was no indication of negligence until the mother happened to run into a nurse who was on duty at WGH during the care of her daughter.  The nurse, Venus, informed Wanda Ann of the poor treatment given to her daughter.   This information led Wanda Ann to discover the negligent acts contributing to her daughter's death.

II.    VENUE CANNOT REMAIN IN HINDS COUNTY SINCE THE PLAINTIFFS ONLY JOINED THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, DR. MARK DABAGIA, AND DR. AVINASH GULANIKAR FOR THE PURPOSE OF AFFIXING VENUE IN HINDS COUNTY.

¶58.    Next, the majority erroneously finds that venue is not proper in Hinds County.  The law is settled on this issue.  Rule 82(b) of the Mississippi Rules of Civil Procedure provides that "[e]xcept as provided by this  rule, venue of all actions shall be as provided by statute."  Miss. Code Ann. § 11-11-3(1)  provides that "[c]ivil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue."  "[P]roper venue is determined at the time the lawsuit is originally filed, and subsequent dismissal of the defendant upon whom venue is based does not destroy proper venue." *Estate of Jones*, 716 So.2d at 628 (citing *Blackledge v. Scott*, 530 So.2d 1363, 1365 (Miss. 1988)).

¶59. "In suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants. This is true where the defendant upon whom venue is based is subsequently dismissed from the suit. In such situations, venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only." *Estate of Jones*, 716 So.2d at 627 (quoting *Blackledge*, 530 So.2d at 1365 (citing *Jefferson v. Magee*, 205 So.2d 281, 284 (Miss. 1967)). *See also* *Beech v. Leaf River Forest Prods., Inc.*, 691 So.2d 446, 448 (Miss. 1997)(holding venue was properly transferred when defendants were joined for the sole purpose of affixing venue); *Frazier*, 146 So.2d at 885 (holding venue remained proper in Jackson County even after the Jackson County defendant was dismissed); *Dukes v. Sanders*, 124 So.2d at 127 (holding that a court retains venue even after the defendant establishing venue is subsequently dismissed from the lawsuit); *Mississippi State Highway Comm'n v. Rogers*, 240 Miss. 529, 128 So.2d 353, 358 (1961) (holding venue is established at the time of filing and the subsequent dismissal of a defendant does not alter venue); *Howard v. Ware*, 3 So.2d at 832 (holding venue remained proper in county of corporate defendant despite the subsequent dismissal of claims pending against the corporation); *Forman v. Mississippi Publishers Corp*, 14 So.2d at 348 (holding that where a frivolous suit is brought in county of a joined defendant in order to fix venue, venue should be transferred); *Read v. Renaud*, 14 Miss. 79 (holding that a court once having acquired jurisdiction does not lose it by the dismissal of a defendant in the suit). "Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists–

[1] the action was begin in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; [2] the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; [3] and there was a reasonable claim of liability asserted against the resident defendant." *Estate of Jones*, 716 So.2d at 627 (citing *Frazier*, 146 So.2d at 885). When determining whether fraud was involved in the joining of defendants "the proper question is not whether the plaintiff's attorney intended to fraudulently establish venue, but whether the facts support inclusion of the defendant upon whom venue is based." *Estate of Jones*, 716 So.2d at 628 (citing *Jefferson*, 205 So.2d at 283)).

¶60.    In *Blackledge*, we held that when venue is good as to one defendant it is good as to all defendants. 530 So.2d at 1365. Also, we stated that even when the claims upon which venue is based are subsequently dismissed, venue still remains good as to the other defendants. *Id.* In *Jefferson*, we held that where the plaintiff "had no reasonable claim of liability against a railroad company in county in which the [plaintiff] brought [her] action for injury . . ., [defendant] was entitled to have venue of action transferred to county of his residence." 205 So.2d at 281. We reasoned that it is the right of a citizen to be sued in the county in which he resides. *Id.* However, when an "action is properly brought in county in which one of defendants resides, it may be retained notwithstanding there is dismissal of resident defendant, provided action was begun in bona fide belief that plaintiff had cause of action against resident defendant, and the joinder of local defendant was not fraudulent or frivolous with intent of depriving nonresident defendant of his right to be sued in his own county." *Id.* at 284. In *Estate*

*of Jones*, we held that the "[i]nclusion of state officials as defendants in a negligence and wrongful death action arising out of death by handing of a jail inmate was supported by reasonable basis, as required to base venue for all defendants on proper venue for state defendants, even though state defendants were subsequently dismissed by trial court." 716 So. 2d 627. We reasoned that proper venue is determined at the time the lawsuit is filed. *Id.*

¶61. At the time of the filing, plaintiffs were unsure which defendants had caused injury to Wa'Landra. Their claims were based on the belief that physicians at UMMC had negligently inserted a dialysis catheter in Wa'Landra which caused complications contributing to her death. After medical records were gathered and reviewed by an independent physician, it was noted that the sepsis was probably caused by a perforated bowel which was likely an injury sustained during the dialysis catheter insertion. These findings gave the plaintiffs a good faith belief that they had a bona fide claim against the Hinds County defendants.

¶62. The fact that venue in Hinds County under Miss. Code Ann. § 11-11-3(1) was proper, here venue is controlled by Miss. Code Ann. § 11-46-13(2).

III. WAYNE GENERAL HOSPITAL IS A "COMMUNITY HOSPITAL " UNDER THE MISSISSIPPI TORT CLAIMS ACT ENTITLING IT TO EXCLUSIVE VENUE IN WAYNE COUNTY.

¶63. The majority erroneously finds that venue is not proper in Hinds County since WGH is a "community hospital."

¶64. The MTCA provides the exclusive remedy for suits and claims asserted against the state and its political and corporate subdivisions. Miss. Code Ann. § 11-46-1(g) defines governmental entity to include "state and political subdivisions as herein defined." Miss. Code Ann. § 11-46-1(i) defines political subdivision for the purposes of the Mississippi Tort Claims

31

Act to be "any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including but not limited to any county, municipality, school district, community hospital as defined in Section 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name."  Miss. Code Ann. § 41-13-10(c) defines community hospital as "any hospital, nursing home and/or related health facilities or programs, including without limitation, ambulatory surgical facilities, intermediate care facilities, after-hours clinics, home health agencies and rehabilitation facilities, established and acquired by boards of trustees or by one or more owners which is governed, operated and maintained by a board of trustees."  Miss. Code Ann. § 11-46-7(1)  provides for the exclusive remedy "against the governmental entity or it's employees or the estate of the employee for the act or omission which gave rise to the claim or suit."  It is further provided that "any claim made or suit filed against a governmental entity or its employee to recover damages for any injury . . . shall be brought only under the provisions of this chapter; notwithstanding the provisions of any other law to the contrary." Miss. Code Ann. § 11-46-7(1).  Venue under this chapter is provided for in Miss. Code Ann. § 11-46-13(2), which states the following:

> The venue for any suit filed under the provisions of this chapter against the state or its employees shall be in the county in which the act, omission or event on which the liability phase of the action is based, occurred or took place.  The venue for all other suits filed under the provisions of this chapter shall be in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located.  The venue specified in this subsection shall control in all actions filed against governmental entities, notwithstanding that other defendants which are not governmental entities may

32

be joined in the suit, and notwithstanding the provisions of any other venue statute that otherwise would apply.

¶65. The purpose of Title 11, Chapter 46 and its subparts is to place the exclusive venue for actions under the chapter in the county in which the act or omission causing the injury occurred or the county in which the political subdivision is located. As this is illustrated in *Estate of Jones* where the Court found that the proper venue for the death of a prisoner, who hanged himself in a jail shower, was properly in the county in which the prisoner hanged himself. 716 So.2d at 627. However, the question arises, in which county did the act or omission causing the injury occur? There is an argument that since the act and or omissions began in Wayne County but continued to cause injury upon transfer to Hinds County, then venue in Hinds County is proper under Miss. Code Ann. § 11-46-13(2). There is also an argument that under Title 11, Chapter 46 venue was proper in Hinds County since UMMC qualifies under the Mississippi Tort Claims Act and therefore venue should continue in Hinds County.

¶66. The acts or omissions causing injury began in Wayne County but continued into Hinds County as the injuries manifested. A "tort is not complete until the injury occurs." *Williams*, 618 So.2d at 54 (quoting *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss. 1971)). "Torts arise from breaches of duties causing injuries, and it is common experience that breach and causation and impact do not all always happen at once." *Burgess v. Lucky*, 674 So.2d 506, 509 (Miss. 1996). "At the very least, the word 'occur' connotes each county in which a substantial component of the claim takes place." *Burgess*, 674 So.2d 509-10 (citing *Flight Line, Inc. v. Tanksley*, 608 So.2d 1149, 1156-57 (Miss. 1992). In *Burgess*, we held that for the purposes of venue, a cause of action for wrongful death occurs in both the county where the death

33

occurred and the county where the alleged negligence took place. 674 So.2d at 508. *See also McMillan v. Puckett*, 678 So.2d 652, 653 (Miss. 1996) (holding that in a wrongful death suit brought by the parents of an infant who died at six months, venue was proper in both the county where the negligent act occurred and where the infant died)). However, in *Forrest County General Hospital v. Conway*, 700 So.2d 324, 325 (Miss. 1997), we stated that a "medical malpractice action against a hospital and physician at the hospital, which was based on alleged negligence in failing to diagnose disease of a child patient, occurred or accrued, for the purposes of venue statute in the county where the hospital was located, and not in the separate county where the injuries manifested themselves after the patient was transferred to the university hospital, the county where the university hospital was located, in which neither plaintiff nor any of the named defendants resided, was not proper venue for the action." This Court distinguished the facts presented in *Forrest County General Hosp.* from those presented in *Burgess* and *McMillan* by stating that deaths were involved in those cases whereas the plaintiff in *Forrest County General Hosp.* suffered injuries from a misdiagnosis. *Id.* at 327.

¶67.    Venue was proper in Hinds County as to the Hinds County defendants since UMMC and the physicians qualified under the Mississippi Tort Claims Act. Applying Miss. Code Ann. § 11-46-13(2), it is clear that venue was proper in Hinds County since the UMMC defendants were residents of Hinds County. However, the statute also makes venue proper in Wayne County as to the WGH defendants. The question then becomes what to do when there are two proper venues under the statute.

34

¶68. In *Myers v. Vinson*, 212 Miss. 85, 54 So.2d 168, 172 (1951), this Court stated that "where there are two or more defendants to transitory cause of action and venue is fixed by statute in either of two or more counties, plaintiff or complainant may elect to bring suit in either county, provided defendant in county where suit is brought is material party and there is valid cause of action against him, and he is not fraudulently joined for purpose of fixing venue." "Where venue is proper in two different counties, '[o]f right, the plaintiff selects among the permissible venues, and his choice must be sustained unless in the end there is no credible evidence supporting the factual basis for the claim of venue.'" *Earwood v. Reeves,* 798 So.2d 508, 513-14 (Miss. 2001) (quoting *Burgess*, 674 So.2d at 509). When the petition was filed, venue was proper in Hinds County. Under the general venue rules discussed in subsection II, dismissal of the claims against the Hinds County defendants did not make venue improper. Venue continues to be proper despite the dismissal.

¶69. Venue under Miss. Code Ann. § 11-46-13(2) is proper in Hinds County under both theories that (1) the act or omissions causing the injuries continued into Hinds County; and (2) when applying the statute and general venue rules, venue against co-defendant UMMC was proper in Hinds County therefore making venue against WGH proper in Hinds County.

IV. THE PLAINTIFFS CLAIMS AGAINST WAYNE GENERAL HOSPITAL SHOULD HAVE BEEN DISMISSED BY THE CIRCUIT COURT JUDGE SINCE NO NOTICE OF CLAIM WAS TIMELY FILED AND ANY CLAIMS ARE BARRED BY THE ONE YEAR STATUTE OF LIMITATIONS UNDER MISS. CODE § 11-46-11(3).

¶70. Although, the majority fails to address this issue, the plaintiffs claims against WGH are not barred by the statute of limitations under a proper application of the discovery rule. It has

35

already been established above in subsection III, that the defendants are entitled to the protections of the Mississippi Tort Claims Act. Therefore, Miss. Code Ann. § 11-46-11(3)'s one-year statute of limitations is applicable. However, as discussed above in subsection I, this statute of limitations is subject to the discovery rule. Which as applied to these facts, begins the running of the statute in the Fall of 1999. The complaint was filed on March 27, 2000, well within the one-year statute of limitations. Furthermore, this Court has held that "genuine disputes as to the ability to discover a latent injury are questions of fact to be decided by a jury." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 168 (Miss. 1999) (citing *Schiro v. American Tobacco Co.*, 611 So.2d 962, 962 (Miss. 1992)). Any issues related to the plaintiffs' discovery of the injuries is a question for the fact finder. Therefore, the circuit court properly denied the defendants' motion to dismiss.

¶71. For these reasons, I dissent since the circuit court's order denying the defendants' motions to dismiss and/or summary judgment and motions to transfer venue should be affirmed and this case should be remanded for further proceedings in the Hinds County Circuit Court.

**EASLEY, J., JOINS THIS OPINION.**